# COMMERCIAL PRINTING CO. and Bobbie TOSCA *v.* W. M. Bill LEE, Judge

77-65                                     553 S.W. 2d 270

Opinion delivered July 18, 1977
(In Banc)

88

*Coleman, Gantt, Ramsay & Cox,* by: *William C. Bridgforth* and *Spencer F. Robinson,* for petitioners.

*Bill Cinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for respondent.

CARLETON HARRIS, Chief Justice. This litigation arises because of the trial court's action in permitting *voir dire* during a criminal trial to be conducted in chambers away from the press and public.

On March 2, 1977, on a change of venue from Arkansas County, the trial of *State* v. *Antonio Clark* commenced in the Circuit Court of Lonoke County. According to the abstract, which is rather meager, upon request of the attorneys representing Clark, the *voir dire* of the prospective jurors was held in chambers with only the court, the prosecuting attorney, the defendant, defendant's counsel, the court reporter, and the prospective juror who was being *voir dired*

present. After interrogation had commenced, the circuit clerk, at request of the petitioner, advised the court that petitioner desired to be present in chambers during the *voir dire,* but the court advised the clerk that defense counsel wished to exclude the press "to avoid adverse publicity for our client;" this request was granted by the court, and the clerk was instructed to so advise members of the press who were desiring admission. According to the affidavit by the judge of the court, no personal request to sit in on the *voir dire* was made to him by members of the press. While it is not entirely clear from the record, it does not appear that petitioner knew that *voir dire* would be conducted in chambers, rather than the courtroom, until it had commenced. At any rate, this is not material to the decision herein, and the court was certainly advised that a member or members of the press desired admittance to the *voir dire* examination. Following the conclusion of the *voir dire,* the trial was resumed in open court. Thereafter, affidavits were executed by the judge of the court, the prosecuting attorney, and the two defense counsel, which set out the facts just enumerated, and petitioner filed this action seeking mandamus.

Preliminary matters that relate to our decision should first be disposed of, though some are not argued in the briefs. Of course, *voir dire* of the jury is a part of the trial itself. *Sirratt v. State,* 240 Ark. 47, 398 S.W. 2d 63. The news media, even though not a party to litigation in the trial court, has standing to question the validity of such an exclusion. The Florida Supreme Court in *State of Florida ex rel Miami Herald Publishing Co., etc., et al, Relators* v. *McIntosh, Circuit Court Judge, Respondent,* 340 So. 2d 904, stated:

"It has been recognized in Florida and elsewhere that the news media, even though not a party to litigation below, has standing to question the validity of an order because its ability to gather news is directly impaired or curtailed. This is so, because the public and press have a right to know what goes on in a courtroom *** ."

See also *Phoenix Newspapers, Inc.* v. *Jennings* (Ariz.) 490 P. 2d 563, where the court said:

"One further point should be briefly considered. Respondent urges that petitioner has no standing or right to interfere with a criminal action in which it is not a party. However, we think the constitutional right here sought to be enforced is of such significance that any member of the public has a standing to question his exclusion from a judicial hearing."

Is the issue presented now moot? It is quite true that the *voir dire* was completed, and that the court's order[1] only excluded the press and public during the *voir dire,* the trial thereafter resuming in the courtroom and subsequently concluding. However, we cannot agree that the issue is moot. In *Nebraska Press Association, et al* v. *Stuart, Judge, et al,* 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976), Chief Justice Burger, writing for the court, stated:

"The Court has recognized, however, that jurisdiction is not necessarily defeated simply because the order attacked has expired, if the underlying dispute between the parties is one 'capable of repetition, yet evading review.' "

Likewise, in *Roe* v. *Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, the United States Supreme Court held that Ms. Roe could still challenge the Texas abortion statute, although she was no longer pregnant, stating:

"If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial state, and appellate review will be effectively denied."

Certainly the matter of excluding the public and press from the *voir dire* examination may well occur again, and yet, entirely "evade review." In the case before us, there was no opportunity to petition the Supreme Court; there was no opportunity at the time the *voir dire* was being conducted to make a record. The Attorney General's office, representing the respondent, states:

---

[1]No written order was issued, but of course the court's pronouncement was still an order which was fully effective and prevented the attendance of members of the press.

"By not asserting their claim to be present at a time when steps could have been taken to determine the validity of their request, the Petitioners must be deemed to have waived their right to subsequently complain of their exclusion."

As far as the lack of a personal request to the trial court, we have already commented on that circumstance, and certainly no reporter could have, with propriety, hammered on the door of the judge's chambers as a matter of demanding admittance, or of expressing objections to the court's ruling. It would appear that the petition for writ of mandamus was filed here as expeditiously as possible, same being tendered to the clerk of the court four days after the conclusion of the trial. There was no waiver.

It is argued that mandamus is not a proper remedy; in effect, this argument is simply that the matter of granting the request of counsel for the defendant was a matter of discretion with the trial court. We do not agree, for the reasons hereafter stated.

First, however, let it be said that Article 7, § 4, of the Arkansas Constitution, in defining the jurisdiction and powers of the Arkansas Supreme Court, provides that this court shall have a superintending control over all inferior courts of law and equity, and in aid of its appellate and supervisory jurisdiction, shall have power to issue, *inter alia,* writs of mandamus, and to hear and determine the same. We pointed out in *State* v. *Nelson, et al,* 246 Ark. 210, 438 S.W. 2d 33, that acts of trial courts can be subject to review by this court under its supervisory jurisdiction, stating, "Writs of mandamus, prohibition and certiorari are designed for the appropriate exercise of this jurisdiction, where appellate remedy is unavailable or inadequate."[2] In an earlier case, *Edmondson v. Bourland,* 179 Ark. 975, 18 S.W. 2d 1020, a guardian ad litem had been appointed for Edmondson in her suit to construe a will. Mrs. Edmondson, through attorneys of her own selection, filed a motion to set aside the appointment of the guardian ad litem for her as an insane person; the court refused to

---

[2]Of course, in the litigation before us, there could have been no appeal because petitioner was not a party to the litigation.

permit the motion to be filed and also struck an answer and cross-complaint which had been filed a few days before by these attorneys, the court proceeding on the ground that her defense to the action could only be made by the guardian ad litem appointed by the court. Pointing out that mandamus may be employed to prevent irreparable injury, as where the remedy by appeal is inadequate, this court held mandamus to be an appropriate remedy and commanded the trial court to proceed in accordance with the views stated in the opinion.

As stated, the matter at issue was not one which addressed itself to the discretion of the trial court, for the court lacked the authority to prohibit the public and press from the *voir dire* examination — which is the sole question presently before this court. Indeed, as far as the record reflects, there was not even any attempt to show how the defendant Clark would be prejudiced unless the *voir dire* was conducted in chambers with only court officials present. Rather, the record only reveals that a request was made by defense counsel that this be done for the reason of avoiding "adverse publicity for our client." Actually, we have a statute, Ark. Stat. Ann. § 22-109 (Repl. 1962), enacted in 1838, which permits the public to observe the administration of justice in our courts. Where there are statutory[3] and case law exceptions, none are applicable here.

Really, from a practical standpoint, of all the phases of a criminal trial, we can think of less reason to exclude the public, including the press,[4] during the *voir dire* than at most any step taken during the course of litigation. Normally, lawyers ask prospective jurors if they know anything about the facts of the case — if they have talked with any person concerning the facts who purports to be a witness — if they are represented by one of the attorneys involved — their feelings about the possible punishment that might be imposed — or if there is any reason why they could not give

---

[3]Ark. Stat. 22-404.1 (Repl. 1962).

[4]Many cases make clear that in cases of this nature the right of the press is the same as that of members of the public, no greater, no less. For example, see *State of Florida Ex Rel Miami Herald Publishing Co., etc., et al, Relators* v. *McIntosh, Circuit Court Judge, Respondent,* supra; *Oxnard* v. *Superior Ct. of Ventura County,* 261 ACA 505, 68 Cal. Rptr. 83 (1968).

both the state and the defendant a fair and impartial trial. Facts of the case are not generally discussed in *voir dire*; of course, publicity about the circumstances of the crime itself — any statements that had purportedly been made by witnesses, defendant, etc., were published when the crime happened or when the arrest was made.

Certainly members of the public, probably including members of a victim's family, have the right to hear the *voir dire* examination of individual jurors. This may well have a salutary effect. Cases have been reversed in this court because of answers given by prospective jurors on *voir dire* which subsequent investigation established were false, or at least incorrect, and which might have well disqualified the prospective juror. Particular spectators in a courtroom may know of such facts and call them to the attention of interested parties.

One thing is particularly unusual about this case, viz, that the request for the closed *voir dire* hearing was made by the defendant.

Article 2, § 10, of the Arkansas Constitution provides that an accused in a criminal prosecution shall "enjoy the right to a speedy and public trial."

But, says the respondent:

"The act of the Respondent was done at the request of the defendant and pursuant to the furtherance of a fair and proper administration of justice. The Petitioners have failed to show that they have suffered any prejudice due to the Respondent's act; . . . "

This is immaterial, for though a defendant is guaranteed a *public* trial, there is nothing in our constitution or the federal constitution which guarantees a *private* trial. After all, members of the public have an interest in the trial of one charged with a felony, for a crime is a wrong *against the public,* and affects every citizen.

This is no new premise. Probably the best known legal writer of all time, Sir William Blackstone, a member of His

Majesty's Court of Common Pleas during the 18th Century, in his Commentaries on the Laws of England, Volume 4, Page 1428, Paragraph 5 (Lewis' Edition), stated:

> "Public wrongs or crimes and misdemeanors are a breach and violation of the public rights and duties due to the whole community, considered as a community in its social aggregate capacity."

Lay citizens, in criticizing courts in reversing or dismissing criminal cases because of the state's failure to comply with some legal requirement (though perhaps thought to be technical), frequently comment that the courts scrupulously observe every right of a defendant, but sometimes seem to overlook that the public also is directly affected by criminal acts and has a direct interest in the outcome of the proceedings.

Additionally, the courthouses are paid for with public funds; the judges, jurors, state's attorney (and defense attorneys who have been appointed by the court because of the indigency of their clients) are paid with public funds. The public has every right to ascertain by personal observation whether its officials are properly carrying out their duties in responsibly and capably administering justice, and it would require unusual circumstances for this right to be held subordinate to the contention of a defendant that he is prejudiced by a public trial (or any part thereof).

As stated previously, we have only one question before us, viz, was the court's order excluding the public and press from the *voir dire* valid? It is clear by what has been said that we have answered with an emphatic "No!"

In conclusion, whether the petition be treated as a petition for writ of mandamus, or as a petition for declaratory judgment, is really of no consequence. Of course, the case being fully disposed of in the trial court,[5] the granting of the writ would be an empty gesture. Suffice it to say that if the

---

[5]Clark was convicted, but of course the decision here rendered can have no effect upon the case since the exclusion of the public and press was at the request of his attorneys.

circumstances had permitted the presentation of this petition to this court before the *voir dire* was conducted — it would have been granted.

The court erred in excluding the press and public from the *voir dire*.

GEORGE ROSE SMITH, J., concurs.

GEORGE ROSE SMITH, Justice, concurring. Today's opinion really should have been delivered on the Fourth of July, as it probably would have been in, say, 1949 or 1955, when the court customarily sat every Monday during the term, even on Independence Day. Today's opinion would, I think, have added brilliance to the celebration.