Ginger SHIRAS and
ARKANSAS GAZETTE COMPANY
*v.* Henry M. BRITT, Circuit Judge

78-34                                     589 S.W. 2d 18

Opinion delivered November 13, 1979

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* by: *Phillip Carroll,* for petitioners.

*Bill Clinton,* Atty. Gen., by: *Martin J. Nevrla,* Asst. Atty. Gen., and *Steve Clark,* Atty. Gen., by: *David L. Williams,* Asst. Atty. Gen., for respondent.

CONLEY BYRD, Justice. During the conspiracy to murder trial of Rodney Coston, and out of the hearing of the jury, respondent Henry M. Britt, Circuit Judge, excluded the public and the press from a "Denno" hearing conducted pursuant to Ark. Stat. Ann. § 43-2105 (Repl. 1977). The respondent, on one other occasion during a proffer for the record of testimony held to be inadmissible, ruled that petitioner Ginger Shiras could remain present during the proffer only upon condition that the respondent could censor any story written about the proffer. Petitioner would not submit to the censorship, and was accordingly excluded during the proffer. This petition was brought to challenge the actions of respondent.

We have reviewed the petition for mandamus, as an after-the-fact situation, for the reasons set forth in *Commercial Printing Co. & Tosca* v. *Lee,* 262 Ark. 87, 553 S.W. 2d 270 (1977).

During oral argument, it was conceded by petitioner that she had no greater rights to attend the trial than any other member of the public. Consequently, we shall only deal with the rights of petitioner as a member of the public.

In asking for the issuance of a writ, petitioners contend that the exclusion from the "Denno" hearing, Ark. Stat. Ann. § 43-2105 (Repl. 1977), and the proffer of proof by the witness was a violation of Ark. Stat. Ann. § 22-109 (Repl. 1962) and Art. 2 § 6 of the Constitution of Arkansas and the First and Fourteenth Amendments to the Constitution of the United States. Respondent asserts that petitioner's legal rights were not violated since the press has only a limited right of access to in camera hearings and that the challenged action of respondent advanced the public interest in a fair

and prompt criminal trial in which the rights of the accused were protected.

Most of the briefs of both petitioner and respondent are centered around her alleged Federal constitutional rights and the recent case of *Gannett Co., Inc.* v. *DePasquale, County Court Judge of Seneca County, N.Y.,* U.S., 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979). However, we need not reach those issues, because as we view the issues before us, they are controlled by Ark. Stat. Ann. § 22-109 (Repl. 1962) which provides:

> "The sittings of every court shall be public, and every person may freely attend the same."

In *Commercial Printing Co., & Tosca* v. *Lee, supra,* after pointing to Ark. Stat. Ann. § 22-109 (Repl. 1962), and the fact that the Constitution of Arkansas does not guarantee a private trial, we stated:

> "This is no new premise. Probably the best known legal writer of all time, Sir William Blackstone, a member of His Majesty's Court of Common Pleas during the 18th Century, in his Commentaries on the Laws of England, Volume 4, Page 1428, Paragraph 5 (Lewis' Edition), stated:
>
>> 'Public wrongs or crimes and misdemeanors are a breach and violation of the public rights and duties due to the whole community in its social aggregate capacity.'

Lay citizens, in criticizing courts in reversing or dismissing criminal cases because of the state's failure to comply with some legal requirement (though perhaps thought to be technical), frequently comment that the courts scrupulously observe every right of a defendant, but sometimes seem to overlook that the public also is directly affected by criminal acts and has a direct interest in the outcome of the proceedings.

Additionally, the courthouses are paid for with public

funds; the judges, jurors, state's attorney (and defense attorneys who have been appointed by the court because of the indigency of their clients) are paid with public funds. The public has every right to ascertain by personal observation whether its officials are properly carrying out their duties in responsibly and capably administering justice, and it would require unusual circumstances for this right to be held subordinate to the contention of a defendant that he is prejudiced by a public trial (or any part thereof).

As stated previously, we have only one question before us, viz, was the court's order excluding the public and press from the *voir dire* valid? It is clear by what has been said that we have answered with an emphatic 'No!' "

Respondent contends that the challenged action actually advanced the public interest in a fair trial by protecting the rights of the accused. In this connection he points out that the most damaging outside information in a criminal trial comes from suppression hearings. He acknowledges that society benefits when there is access to all open court proceedings but concludes that the State's obligation to protect the right of the accused to a constitutionally fair, speedy and impartial trial must be given even greater consideration.

We cannot agree with respondent's emphasis on the rights of the accused for to do so puts the courts in the position of letting the tail wag the dog. Courts operate for the benefit of the public and like Caesar's wife should appear to be above reproach. When the public loses confidence in the ability of the courts to fully and impartially deal with those accused of crime, the public has a tendency to take the law into its own hands. In that case all of society is the loser because the innocent have no way of protecting themselves from their accusers.

Furthermore, the handling of the public's business in secret and behind closed doors not only causes the public to view the results with distrust, but it deprives the public of sufficient knowledge to make adjustments or reform in the

law or the judiciary. Just recently a farmer by trade introduced and put through the General Assembly a judicial redistricting of the several judicial circuits and districts in this State. Needless to say, we have concluded that the rights of the accused to a fair and impartial trial do not exceed the rights of the public to observe justice in progress.

Writ granted.