**HOUSTON CHRONICLE PUBLISHING COMPANY and Nene Foxhall, and The Houston Post Company, Channel Two Television Company, and KPRC Radio Company, Petitioners,**

v.

**Honorable I. D. McMASTER, Judge, 179th Judicial District Court, Harris County.**

**No. 64751.**

Court of Criminal Appeals of Texas, En Banc.

May 14, 1980.

W. Robert Brown and Charles H. Waters, Jr., Houston, for Houston Chronicle Pub. Co. & Nene Foxhall.

James E. Crowther, Charles B. Holm and Richard A. Sheehy, Houston, for The Houston Post Co., Channel Two Television Co. & KPRC Radio Co.

Mark Vela and Stanley G. Schneider, Houston, for McManus.

Donald W. Rogers, Jr., Houston, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

These are two, formerly three,[1] actions for extraordinary relief which we have consolidated for hearing and determination of

---

1. First, presented by Houston Chronicle Publishing Company and its employee Nene Foxhall, is a petition for writ of mandamus or writ of prohibition; next, from The Houston Post Company, Channel Two Television Company and KPRC Radio Company, is a petition for writ of mandamus. (These "media" parties will be called collectively Petitioners.) Then came to us from one Vernon Eugene McManus a pleading in one part of which he seeks "to intervene on behalf of" the named Petitioners, but also asserts his own rights in the premises and prays for similar relief. However, McManus has now recanted through his motion to withdraw motion for leave to file. The Respondent, the Judge of the 179th Judicial District Court, is the object of the extraordinary relief sought by Petitioners; he has responded to all motions for leave to file.

whether to grant the relief they seek. While original in this Court they are in a sense ancillary to a proceeding pending in Cause No. 249,771 in the 179th Judicial District Court of Harris County, styled in the papers before us Ex parte Vernon Eugene McManus. The pending proceeding in that cause, initiated by two applications for writ of habeas corpus filed in the court below,[2] is in turn related to a criminal case of the same number that has been tried to judgment in that court, The State of Texas v. Vernon Eugene McManus. The criminal case has an appellate history to which we shall allude presently.

The controversy underlying the flurry of activity toward this Court is satisfactorily described in portions of the response from Respondent that follows:

"The Relators herein are seeking relief in the form of a writ of mandamus or alternatively a writ of prohibition directed against Respondent as the result of Respondent's action in entering an Order . . . *barring the attendance of the public and the press*[3] at a hearing in connection with a postconviction petition for writ of habeas corpus filed by Vernon Eugene McManus arising from his conviction for the offense of capital murder and attendant death sentence [sic] in connec-

tion with Cause No. 249,771 in the 179th District Court of Harris County . . . Petitioner . . . challenge[s] the validity of his conviction . . . on several theories, including (1) that he was denied effective assistance of counsel at his trial as a result of a conflict of interest with his retained trial lawyer . . . because [his lawyer] was having an affair with Petitioner's wife during the trial and subsequently married her; and (2) that one of the prosecutors at his trial . . . was having an affair with a key State's witness during the trial and suborned perjury through the testimony of said witness. . . . Respondent, acting within the discretion conferred upon him by virtue of the provisions of Art. 11.07, C.C.P., elected to conduct a hearing to determine the validity of the allegations made by Petitioner, and acting within the scope of his discretion in habeas corpus matters, elected to close said hearing to the public because of the lewd, lascivious, and sexual nature of the allegations made by Petitioner and the effect that the same could have on the reputations of the witnesses who would be required to give testimony at said hearing, namely by entering the Order heretofore referred to . . . "[4]

2. The first application was subscribed and sworn to by McManus on January 28, 1980; it bears an April 11, 1980 file mark of the Harris County District Clerk. The second application, as it appears in the papers before us, is neither dated nor verified; it shows to have been filed at 2:10 p. m., April 28, 1980. That same date is handwritten on the order of the habeas court evidencing the ruling that bases the controversy Petitioners bring to this Court, but an affidavit among their papers reports that Respondent announced his ruling at 2:00 p. m. on that day and, we are given to understand, reset hearing for the following morning. In his response to Petitioner's motions for leave to file the actions here, Respondent nevertheless refers to both habeas corpus applications as "the pleadings" and to certain allegations made exclusively in each, and attaches what are represented by Respondent to be, although not certified, a copy of each application. We will proceed on the premise thus accepted by Respondent— that his ruling applies to hearing both applications for writ of habeas corpus. Moreover, the applications, while they do not mention it in terms, are plead and considered by all, includ-

ing this Court, as seeking post-conviction relief pursuant to Article 11.07, V.A.C.C.P.

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. In her affidavit Petitioner Foxhall recounts that during the week of April 21, 1980, Respondent stated to her that "he intended to close to the press and public the habeas corpus proceeding brought by Vernon Eugene McManus, set for hearing on Monday, April 28, 1980." That disclosure, apparently, triggered a "mini-hearing" concerning his stated intention, held by Respondent preliminary to the scheduled habeas proceeding. After that hearing Respondent announced his ruling and entered his Order which, omitting formal parts, date and signature, reads in its entirety as follows:

"The Court having heard arguments and brief filed by counsel for the defense, counsel for the new [sic] media and counsel for the state, and because of the potential damage to the reputation of the witnesses due to the

A transcription of the notes made by the court reporter has been furnished the Court. It is uncontroverted: that through counsel McManus expressed his desire that the hearing be open to the public and press, asserting that otherwise his constitutional rights would be denied;[5] that the assistant district attorney representing the State requested that the hearing be open; that counsel for each corporate Petitioner opposed the proposed closing and argued orally and by written memoranda that an open hearing be held—all in the physical presence of Vernon Eugene McManus in the courtroom. The record is barren of testimony as to the factual allegations concerning extracurricula activities of attorneys and witnesses during the 1977 trial and as to any harm, damage or injury to them that might attend revelations of their alleged conduct in open court. Indeed, for aught that appears to us, no person implicated in the habeas allegations was present in court and voiced a position one way or the other. It seems, then, that Respondent initially and throughout was acting *sua sponte*, and his ruling was made without any proof.

To resolve the controversy thus presented, fortunately, we need not labor in search of the common law nor pontificate federal and state constitutional principles in an ef-

fort to relieve facial tensions between freedom of the press, the public right to know, and right of an accused to a fair public trial.[6] Indeed, we do not address constitutional provisions at all, for the Legislature of Texas has provided the standard to be applied in the unusual circumstances of the causes before us.

Article 1.24, V.A.C.C.P., plainly and unequivocally, mandates today, as has each predecessor before it:

> "The *proceedings* and trials in all courts *shall be public.*"

■ Whatever else may be argued about its nature and class, that an application for writ of habeas corpus generally[7] and post-conviction[8] initiates a "proceeding" cannot be gainsaid. Manifestly, the prospective order rendered and entered by Respondent is contrary to positive statutory imperative.

Without endorsing all its sentiments, we borrow, as a fair statement of one aspect of public policy considerations backing the command, from *Shiras v. Britt*, 589 S.W.2d 18, 20 (Ark.S.Ct. 1979):

> "Furthermore, the handling of the public's business in secret and behind closed doors not only causes the public to view the results with distrust, but it deprives the public of sufficient knowledge to

---

nature of the allegations contained in both of the post-conviction writs, the Court is of the opinion that, for the protection of the witnesses, the Court is ordering *closed to the public and press and all parties not in interest* the hearing on the post-conviction writs filed by the defense in the above styled and numbered cause."

5. Before this Court, however, McManus has now taken a 180 degree change of course; for reasons stated in his affidavit attached to his motion to withdraw motion for leave to file, McManus desires that hearing on his habeas applications be closed.

6. Just last year the Supreme Court of the United States, explored, revealed and produced such disagreement among reasonable and learned men over these matters in *Gannett v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) that it has already decided to revisit the problems in *Richmond Newspapers, Inc. v. Commonwealth of Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).

7. See, e. g., *McFarland v. Johnson*, 27 Tex. 105 (1863); *Legate v. Legate*, 87 Tex. 248, 28 S.W. 281 (1894); *Worden v. Worden*, 148 Tex. 356, 224 S.W.2d 187 (1949); *Ex parte Nix*, 149 Tex. 267, 231 S.W.2d 411 (1950) cert. denied, 340 U.S. 840, 71 S.Ct. 28, 95 L.Ed. 616 (1950); *Ex parte Ramzy*, 424 S.W.2d 220 (Tex.1968): "In such a proceeding the petition for a writ of habeas corpus is for the relief of the *prisoner* . . . . We hold that the authority to grant the writ is conferred upon the Court or the judge, and that a proceeding by habeas corpus is a matter for the investigation of the judge," *id.*, 223. (Emphasis in original.)

8. The opinion in the modern leading case concerning then extant procedure, *Ex parte Young*, 418 S.W.2d 824 (Tex.Cr.App. 1967) begins, "This is a habeas corpus proceeding in which . . . .," and Article 11.07, supra, provides in Section 3 now, as then, "After conviction the procedure outlined in this Act shall be exclusive and any other *proceeding* shall be void and of no force and effect in discharging the prisoner."

make adjustment or reform in the law or the judiciary."

Yet, the commonly presumed beneficiary of public proceedings in criminal matters is the accused, the notion being that an accused is afforded a measure of protection "by permitting the public to see that he is not unjustly condemned and to keep his triers alive to their responsibilities by the presence of spectators," Interpretive Commentary following Article I, Section 10, Bill of Rights, 1 Vernon's Texas Constitution 267. In the instant causes both aspects intertwine in a particularly significant and compelling fashion: McManus is protesting that the criminal justice system failed him through like frailties of two of its principal participants, the prosecutor and counsel for the defense. If the system failed McManus, it at once surely disserved the public. In demonstrating that failure before their very eyes, if he can, McManus will provide the public with some information on which to base adjustment or reform in the criminal justice system. Against the opposition of both parties and over the protest of Petitioners and without any proof of its necessity, Respondent was not authorized to order closed the proceeding that the statute commands shall be open to the public.

■ Nevertheless, at this juncture relief sought will not be granted for Respondent is without power to hold the hearing in the first place. The issue of closure has been addressed here in the interest of judicial economy, anticipating that at the appropriate time McManus will request and Respondent will grant a hearing on the applications for writ of habeas corpus. It is to that timeliness that we now turn.

May 20, 1977 the trial court entered judgment that McManus is guilty of the offense of capital murder and assessed the death penalty. That judgment of conviction was affirmed by this Court and on January 16, 1980, denying motion for leave to file motion for rehearing, the Court entered but stayed issuance of its mandate for thirty days. By order dated February 14, 1980 Mr. Justice Lewis F. Powell further stayed our mandate pending timely filing by McManus of his petition for writ of certiorari and, if so filed, disposition of the writ by the Supreme Court of the United States.[9] April 3, 1980, so we are advised, time for filing the petition was extended to and including June 15, 1980. Though entered, our own mandate has not yet issued.

Accordingly, on paper at least, McManus is pursuing his right to have the Supreme Court of the United States review the judgment of this Court affirming the judgment of conviction rendered by and entered in the trial court. The consequence of his endeavor is that the special suspension and notification procedure attending a capital case has not been effectuated.[10] Pursuant to Article 42.09, Section 4, V.A.C.C.P., McManus was transferred to the Department of Corrections "on a commitment pending a mandate from the Court of Criminal Appeals." But he must be present when sentence is pronounced, Articles 42.02 and 42.03, id., and, of course, the trial court is not authorized to pronounce, and will not know to schedule imposition of, sentencing until the mandate of this Court has been received.[11] Only after sentence is pro-

9. The Court judicially knows this from its records, a certified copy of the stay entered by Mr. Justice Powell being among them.

10. Article 42.04, V.A.C.C.P., provides in pertinent part:

"When an appeal is taken from a death penalty, sentence shall not be pronounced, but shall be suspended until the decision of the Court of Criminal Appeals *has been received.* * * * Upon the affirmance of the judgment by the appellate court, the clerk shall at once send its mandate to the clerk of the Court from which the appeal was taken, there to be duly recorded."

As to the continuing vitality of the first sentence, see *Hughes v. State*, 562 S.W.2d 857, 859 (Tex.Cr.App. 1978). The latter requirement is also imposed generally by Article 44.27, V.A.C.C.P.

11. The effect of appeal was to suspend and arrest "all further proceedings in the trial court" with exceptions not applicable here, until the judgment of the Court of Criminals Appeals, through issuance of mandate, is received by the trial court, Article 44.11, V.A.C.C.P. See, under former statutes, *Mitchell v. State*, 268 S.W. 470 (Tex.Cr.App. 1925).

nounced is the clerk of the trial court empowered to issue a warrant under the seal of the court for execution of the sentence of death, Article 43.15. Not until sentence has been imposed after receipt of mandate has McManus been finally convicted of capital murder. Article 11.07, supra, by its terms is the only post-conviction proceeding provided by State law to determine whether the final judgment under which a petitioner is confined is void. *Mayes v. State*, 538 S.W.2d 637 (Tex.Cr.App. 1976); *Ex parte Young*, supra, at 827, 830. Respondent is presently without authority even to consider habeas applications filed by McManus.

The extraordinary relief sought by the Petitioners is denied.[12]

DALLY, Judge, concurring in part and dissenting in part.

McManus' conviction is not final. Therefore, he is not now entitled to seek post-conviction relief under the provisions of 11.07, V.A.C.C.P. The majority is correct in so holding, but the majority need not and should not go further. However, the majority stating as its reason judicial economy have also rendered a declaratory judgment—an advisory opinion that proceedings when properly brought under the provisions of Art. 11.07, V.A.C.C.P. should not be closed to the public. Although *what* is said in this declaratory judgment may be correct, and I believe that it is, the rendering of that declaratory judgment is entirely improper. This Court has held that it does not have the authority to render declaratory judgments. See e. g., *Ex parte Conner*, 439 S.W.2d 350 (Tex.Cr.App. 1969); *Ex parte Rodriguez*, 413 S.W.2d 919 (Tex.Cr. App. 1967); *Ex parte Usener*, 391 S.W.2d 735 (Tex.Cr.App. 1965); *Ex parte Fertitta*, 167 Tex.Cr.R. 483, 320 S.W.2d 839 (1959); *State v. Parr*, 293 S.W.2d 62 (Tex.Cr.App. 1956); *Ex parte Puckett*, 161 Tex.Cr.R. 51, 274 S.W.2d 696 (1954); *Ex parte Herring*, 160 Tex.Cr.R. 357, 271 S.W.2d 657 (1954); *Ex parte Hammonds*, 155 Tex.Cr.R. 82, 230 S.W.2d 820 (1950).

It will now be difficult to predict when, contrary to precedent and without constitutional or statutory authority, this Court will undertake to render advisory opinions and declaratory judgments. The Court's action here invites others to seek advisory opinions and declaratory judgments in important cases, and what case is not important to the parties involved? This invitation for petitions for advisory opinions and declaratory judgments will not result in judicial economy.

The majority says that these issues with which the declaratory judgment deals were clearly raised and determined in the trial court. It must be remembered as the majority also holds that the trial court was without authority to decide any issues presented in the proceeding before it.

I concur in the result reached by the majority, but I dissent to the rendering of the declaratory judgment.

ONION, P. J., and DOUGLAS, J., join in this opinion.

---

12. The separate opinion by Judge Dally takes the Court to task for rendering what he characterizes as a "declaratory judgment." Yet, the issue determined was clearly raised by the parties below, decided adversely to them by the habeas court and presented to the Court in an original action. In his concurring opinion in *Bradley v. State*, 564 S.W.2d 727, 733 (Tex.Cr. App. 1978) Judge Dally wrote, "I would suggest a procedure that would avoid the problems raised in this appeal," and proceeded to do so. At least we do not go that far in the instant cause.