ARKANSAS TELEVISION COMPANY and Philip
Barry BEASLEY, a/k/a Chris CURTIS *v.*
Cecil A. TEDDER, Circuit Judge

83-160                                   662 S.W.2d 174

Supreme Court of Arkansas
Opinion delivered December 19, 1983
[Rehearing denied January 16, 1984.*]

*PURTLE, J., would grant rehearing. HOLLINGSWORTH, J., not participating.

*Barber, McCaskill, Amsler, Jones & Hale,* for appellants.

*Rose Law Firm,* by: *Phillip Carroll,* for amicus curiae, Freedom of Information Committee, The Society of Professional Journalists.

*William R. Wilson, Jr., P.A.,* for appellee.

STEELE HAYS, Justice. Petitioners, Arkansas Television Company and Philip Barry Beasley, seek a writ of mandamus from this court to direct the respondent, Cecil A. Tedder, Circuit Judge of Lonoke County, to refrain from excluding members of the public and the news media from pretrial suppression hearings held in his court. Although the trial in which the issue arose has ended in a conviction, rendering the question moot, the problem tends to recur but evades review, hence, we will address it here. See *Shiras v. Britt,* 267 Ark. 97, 589 S.W.2d 18 (1979); *Commercial Printing Co. v. Lee,* 262 Ark. 87, 553 S.W.2d 270 (1977).

The fundamental issue presented is what standard the trial court should apply when considering a motion for closure in a pretrial hearing. Decisions of the United States Supreme Court have left areas of uncertainty for the lower

courts which have had to face this problem. The trial court in this case granted a motion for closure for a pretrial suppression hearing using essentially that standard propounded in *Gannett Co. v. DePasquale,* 433 U.S. 368 (1979). In the *Gannett* plurality opinion, the Court sanctioned the closure of a pretrial hearing, finding that the trial court, in its discretion, after balancing the rights of the press and the public against the defendant's right to a fair trial, may grant closure when there is a reasonable probability of prejudice to the defendant. The only clear holding agreed on by a majority of the Court was a finding that the sixth amendment did not provide the public with a constitutional right of access to pretrial suppression hearings.

The two Supreme Court decisions that have come down since *Gannette,* though not dealing with this specific pretrial situation, have fostered some of the confusion over the five opinions coming out of the decision in *Gannett.* See *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613 (1982). However, these two later decisions do provide a degree of clarity in the presentation of the rationale for their holdings. Both recognize a constitutional right of access by the public to criminal trials under the first amendment. After discussing the historical tradition of open criminal proceedings, the Court in *Globe* states:

> Second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the fact finding process, with benefits to both the defendant and to society as a whole. Moreover public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process — an essential component in our structure of self-government. In sum, the institutional value of the open criminal trial is recognized in both logic and experience.

In *United States* v. *Brooklier*, 685 F.2d 1162 (1982), the 9th Circuit considered the distinction between trial and pretrial proceedings and dismissed any significance for purposes of determining the applicability of the first amendment. In stating its position and in summing up those taken by the Supreme Court Justices on pretrial proceedings the court stated:

> . . . [I]t seems evident from the opinions in *Gannett, Richmond Newspapers,* and *Globe Newspaper* that a majority of the Justices would hold the public's right of access under the first amendment applicable to pretrial suppression hearings. Justice Powell expressed this view explicitly in *Gannett.* Justice Blackmun's opinion in *Gannett* on behalf of himself and Justices Brennan, White and Marshall concluded that the public had a right of access to pretrial suppression hearings under the sixth amendment for essentially the same reasons as led the court in *Richmond Newspapers* and *Globe Newspaper* to hold that the public had a right of access under the first amendment. . . . Justice Blackmun concluded in *Gannett*: 'Unlike almost any other proceeding apart from the trial itself, the suppression hearing implicates all the policies that require that the trial be public'. . . . It would elevate form over substance to deny access to an identical proceeding because it began prior to trial.

We agree that the reasoning applies with similar force to pre-trial as well as trial proceedings. We emphasize this not only for the importance as it pertains to the right of the public, but also, because it is often at this stage of the criminal proceedings that the rights of the defendant must be most vigorously safeguarded. Although there are situations when this can be best accomplished by closure there will be other occasions when the best protection a defendant can have is a watchful public.[1]

---

[1]". . . Moreover, quite often suppression hearings are the only important public proceeding that takes place during a criminal prosecution. Thus, whatever educative and therapeutic effects accrue to the public from observing trials must also flow from public access to suppression hearings.

This position is consistent with a tradition in our case law of open judicial proceedings [See *Shiras, supra; Commercial Printing, supra; Wood* v. *Goodson*, 253 Ark. 146, 485 S.W.2d 213 (1975)] and with a legislative mandate of openness dating back to the Revised Statutes:

> The sittings of every court shall be public, and every person may freely attend the same. Ark. Stat. Ann. § 22-109 (Repl. 1962).

In *Shiras,* our reasoning for denying closure was not unlike that as quoted from *Globe, supra. Shiras,* although sympathizing with the public's right to be a part of the judicial process, also found significance in the protection of the accused through the public's gaining sufficient knowledge of the process to make "adjustments or reforms in the law or the judiciary." As in *Globe,* we find the reasoning in *Shiras* to apply as logically to pretrial as to trial proceedings.

This right of public access is *not* absolute, but because of its importance it merits a stricter standard than provided in *Gannett,* when considering closure of pretrial procedures. As noted in *Iowa Freedom of Info. Council* v. *Wifvat,* 328 N.W.2d 920 (Iowa 1983), the United States Supreme Court has not given any clear guidelines to balance the competing interests of open judicial proceedings and fair trials, but many jurisdictions[2] have adopted all or variations of the three prong test articulated by Justice Blackmun's dissent in *Gannett.* We believe the first two prongs of that test

---

"Indeed, these last two purposes are often more directly implicated by suppression hearings than by trials. By definition suppression hearings arise out of the allegations of serious misconduct which has allegedly resulted in the infringement of important civil rights. In those instances in which evidence is not suppressed, despite even serious misconduct by law enforcement officials, a closed suppression hearing will result in the suppression of this information for a substantial period of time. By delaying its dissemination and divorcing it from a meaningful news event, a court is generally ensuring that these facts will never appreciably penetrate the public consciousness. . . . " *Some Observations on the Swinging Courthouse Doors of Gannett and Richmond Newspapers,* Schmidt, Schmidt, 59 Denver Law Journal 721 (1982).

[2]See *Iowa Freedom of Info. Council, supra,* at p. 925, for extensive citations.

adequately protect the two competing interests, requiring that in order to overcome the presumption of open pretrial hearings, the proponent of closure must demonstrate a substantial probability that (1) irreparable damge to the defendant's fair trial will result from an open hearing and (2) alternatives to closure will not adequately protect the right to a fair trial.[3] Additionally, the trial court's findings must be articulated and sufficiently specific to demonstrate on review that these requirements have been satisfied.

Although we have emphasized the advantages we believe accrue to the defendant from open proceedings, it is clear that in many situations the trial court will be in the difficult position of weighing two competing constitutional rights. Before the trial court, and on review, each case will have to be considered on its own merit as directed by the circumstances and exigencies of each situation. Of necessity, the sound discretion of the trial court must bear heavily on the outcome in these cases and the right of an accused to a fair trial cannot be jeopardized where prejudice is evident and no acceptable alternatives to closure appear.

In this case, the trial court made a commendable effort to avoid a simple conclusory finding in granting closure. Even so, that effort did not fully satisfy the previously stated requirements. Alternatives were not fully considered and no evidence was presented by which the court could have made a determination. Recognizing the still unsettled nature of the law in this area and the need for guidance of the trial courts, to the extent the trial court here failed to apply the two pronged standards and to fully weigh alternatives to closure, we find it to have erred, but as it would serve no useful purpose to issue a writ of mandamus after the trial proceedings have been concluded, the petition is denied.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the

---

[3] Alternatives proposed by petitioners are: 1) change of venue; 2) deferment of pretrial hearings until the jury is seated; 3) trial continuance; 4) partial closure of pretrial hearings; 5) use of voir dire; 6) sequestration; 7) admonition of the jury.

results but I generally agree with the law as stated in the majority opinion. Trial courts will be no better off with this opinion than they were before because the opinion does not tell them whether pretrial closure is proper or not. In the present case I would deny the writ because I believe the trial judge proceeded correctly. He properly expressed his reasons for closing the suppression hearing. Clearly *Gannett Co.* v. *DePasquale,* 433 U.S. 368 (1979) held a suppression hearing may be closed when there is a reasonable probability of prejudice to the defendant. Two of the burdens cast upon the proponents of closure are that (1) irreparable harm will result from an open hearing and (2) alternatives to closure are inadequate.

The sixth amendment guarantees an accused a fair trial but it does not guarantee the public the right to attend all phases of the trial or any of it for that matter. On the other hand the first amendment guarantees the public the right to attend all phases of the trial. Therefore, we have two competing interests, both guaranteed by the constitution, calling for different conclusions about the same problem. Neither amendment is superior to the other but nevertheless one has to yield in this situation. I think the right to a fair trial is absolute. If so, first amendment rights would have to be slightly delayed, at least until the end of a hearing. If the court decided to admit the evidence the public could be notified immediately. If the court suppressed the evidence the public would have to wait until the trial to learn what was suppressed. In the case before us, if the public learns that a confession was given no power on earth will erase that fact from the minds of the public. The jury will be selected from these same people. I need neither precedent nor rule of law to know that once it is learned that a confession was given, it can never be completely disregarded by the jurors. Little harm is done to the public by waiting a few hours or a few days to learn what was not allowed in evidence.

It is my opinion that the trial judge in this case correctly decided there was a reasonable probability that the rights of the accused would be prejudiced if the public, including prospective jurors, were informed that the defendant had signed a confession. Such knowledge leaves an indelible

impression and it matters little, if any, that the confession was obtained by fraud, force or otherwise. It is obvious that the court considered all the alternatives to closure. I would hold that whenever a trial court considers the alternatives to closure and finds them inadequate to guarantee the right of fair trial and further finds that there is a reasonable probability of prejudice to the rights of the accused if the hearing is not closed, then he should close the proceedings to the public. On review we would consider the trial court's discretionary procedure in the same manner as in other exercises of discretion matters. That is, absent an abuse of discretion we would not disturb the ruling of the trial court.