MEMPHIS PUBLISHING COMPANY *v.* Honorable C. David BURNETT, Judge of the Circuit Court of Crittenden County

94-201 871 S.W.2d 359

Supreme Court of Arkansas
Opinion delivered March 1, 1994

*Banks, Dodson & Goodhart*, by: *Charles A. Banks*; and *Stephen P. Hale*, for petitioner.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

PER CURIAM. Petitioner Memphis Publishing Company petitions this court to issue a writ of mandamus to Circuit Judge C. David Burnett to conduct *voir dire* of prospective jurors and all other proceedings in open court. The allegation is made that *voir dire* has been closed to the public. Counsel for the parties argued the matter before this court on this date. At oral argument this court was advised that *voir dire* was now completed. Memphis Publishing stated that it desired a release of the court reporter's *voir dire* tapes or, alternatively, a transcription of the tapes. No request for the tapes or transcriptions was made in Memphis Publishing's petition.

■■ We have previously decided that a member of the news media, though not a party to the litigation, has standing to question an exclusion from *voir dire. Commercial Printing Co. & Tosca* v. *Lee*, 262 Ark. 87, 553 S.W.2d 270 (1977). We have also determined that we have jurisdiction to decide the issue, though voir dire is concluded, because the issue may well occur again and yet entirely evade review. *Id.*

The question of an open voir dire has been resolved by this court. *Taylor* v. *State*, 284 Ark. 103, 679 S.W.2d 797 (1984); *Commercial Printing Co. & Tosca* v. *Lee, supra.* We have premised our decisions on the guarantee of a public trial in the state and federal constitutions and in our statutory law. U.S. Const. amend.

6; Ark. Const. art. 2, § 10; Ark. Code Ann. § 16-10-105 (1987). In *Lee*, we discussed what occurs at *voir dire* and why it should be an open process:

> Normally, lawyers ask prospective jurors if they know anything about the facts of the case — if they have talked with any person concerning the facts who purports to be a witness — if they are represented by one of the attorneys involved — their feelings about the possible punishment that might be imposed — or if there is any reason why they could not give both the state and the defendant a fair and impartial trial.
>
> . . . .
>
> Certainly members of the public, probably including members of a victim's family, have the right to hear the *voir dire* examination of individual jurors. This may well have a salutary effect. Cases have been reversed in this court because of answers given by prospective jurors on *voir dire* which subsequent investigation established were false, or at least incorrect, and which might have well disqualified the prospective juror.
>
> . . . .
>
> As stated previously, we have only one question before us, viz, was the court's order excluding the public and press from the *voir dire* valid? It is clear by what has been said that we have answered with an emphatic "No!"

262 Ark. at 93-95, 553 S.W.2d at 273-274.

The State cites *Arkansas Television Co.* v. *Tedder*, 281 Ark. 152, 662 S.W.2d 174 (1983), to bolster its position that this is a matter of discretion in the trial court. We disagree that *Tedder* applies. That case concerned a *pretrial* suppression hearing, not jury selection which we have emphasized to be a stage of the proceedings where openness is particularly appropriate for the reasons already stated. *Commercial Printing Co.* v. *Lee, supra.*

The trial court was in error in excluding the public and Memphis Publishing from *voir dire* in this trial. We do not hold that it was error to conduct *voir dire* out of the presence of

other members of the venire.

Error declared.

HOLT, C.J., dissents.

CORBIN, J., not participating.

JACK HOLT, JR., Chief Justice, dissenting. Under the facts before us, the right to a fair trial should take precedence over the public's right to access to voir dire proceedings, and for this reason I dissent.

The Petitioner has requested that this Court issue a writ of mandamus to Circuit Judge C. David Burnett to conduct voir dire of prospective jurors and all other proceedings in open court and has presented a partial transcript of the court proceedings in support of its petition. Granted, the question of open voir dire has been passed upon by this Court on several occasions. *Taylor* v. *State*, 284 Ark. 103, 679 S.W.2d 797 (1984) and *Commercial Printing Co. & Tosca* v. *Lee*, 262 Ark. 87, 553 S.W.2d 270 (1977). In these cases, we oversimplified the issues and gave short shrift to a defendant's right to receive a fair trial, creating what appears to be an absolute right to open hearings regardless of the circumstances.

The petition before us presents in the starkest terms the opposition of two values of immeasurable worth in our national history and our legal culture — the right of a free press to observe and report criminal trials and the right of a criminal defendant to a fair trial. Both concepts are deeply rooted in the Anglo-American experience, but when they conflict, one must yield to the other.

In my opinion, this court has made the wrong decision in declaring error and, in so doing, has once again elevated a qualified right into an absolute right. As the United States Supreme Court declared in *Sheppard* v. *Maxwell*, 384 U.S. 333, 362 (1966): "Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused."

The United States Supreme Court has, in the past decade, recognized the qualified right of the press to observe criminal trials. In *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555 (1980), the Court held that open judicial proceedings were implicit in the First Amendment guarantee of the freedom of the press. And in *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1 (1986), the Court, considering the right of access to preliminary hearings, ruled that a judge must have evidence of an overriding interest — such as a defendant's right to a fair trial — that cannot be effectively protected except by closing the courtroom.

Such a case is now before us. This court should not follow the absolute rule laid down in *Commercial Printing Co. & Tosca* v. *Lee, supra*, but should apply a more flexible, nuanced balancing test as set forth in "closed court cases." In *Arkansas Television Co.* v. *Tedder*, 281 Ark. 152, 662 S.W.2d 174 (1983), we held that, with regard to reviewing a decision by the circuit court to close pretrial proceedings in criminal cases, such as a suppression hearing, the appropriate standard to apply is a flexible balancing test. We emphasized that the right of public access is not absolute but must be balanced against the defendant's right to a fair trial. To protect the two competing interests, we held that the proponent of closure must demonstrate a substantial probability that irreparable damage to the defendant's fair trial will result from an open hearing and that alternatives to closure will not adequately protect the right to a fair trial. *See also Arkansas Newspaper, Inc.* v. *Patterson*, 281 Ark. 213, 622 S.W.2d 826 (1984). Although these cases pertain to pretrial proceedings, I believe that the same balancing test is appropriate for other phases of a criminal trial.

Here, both the State and the defendant sought closure of the trial, mindful of the fact that there was a substantial probability that irreparable damage to the defendant's fair trial could result from an open proceeding and that alternatives to closure would not adequately protect his right to a fair trial. The court agreed and noted that "I had a couple of jurors express concern about — anonymity requesting that they remain anonymous or their identity not be revealed in the media." The trial court further remarked:

It would be my finding based upon the test laid down in

*Tedder*, a two-prong test that one, irreparable damage will occur to the defendant's right to a fair trial. There is absolutely no question but what if I allowed the 60 odd representatives of the media to crowd into a small room in the back to hear voir dire questions, extensive voir dire questions, the space alone, the carnival atmosphere would just be enhanced. Further, the sensitive nature of the questions that are being asked of prospective jurors in this case simply should not be printed or publicized to the public at large. It is difficult at best. It's almost impossible at this time to find 12 people that can honestly set aside what they might have read, heard or seen about this case in the press. The right of a fair trial as far as this Court is concerned supersedes by far the right of the press to access. And I think counsel will join with the Court. This is not a one-sided deal. I would even prefer to conduct the voir dire as we normally do in the presence of every one here. It would have been a lot simpler for me, we wouldn't have had to set up two pieces of equipment. We wouldn't have to move back and forth. We wouldn't have to take near as much time. But the defendants, in my estimation, would receive irreparable harm from an open voir dire where every member of the potential jury panel would repeatedly hear questions that may reinforce biases or prejudice that may reinforce preconceived notions or ideas, and it's absurd.

And point two, in my estimation, I bet there are no adequate alternatives for closure of the voir dire at this time. And those will be my findings. Gentlemen, if you care to add anything to it that you see facilitates the voir dire in this fashion, I'll be glad to hear your comments.

I'm also going to add that the method and manner that we have selected to conduct the very sensitive voir dire in a case of this magnitude I've never encountered one like this. In fact, I've never encountered the multitudes of motions and side issues in any case I've ever handled. We have elected to conduct the voir dire in this fashion to relieve the prospective jurors of that normal anxiety that all of them have in an ordinary simple case.

With this case the remedy sought by the state, the penal-

ties that are being sought, to ask laypeople to come in from their work, their home, their normal pursuits and to be bombarded by very sensitive questions, to where they have to verbalize their innermost feelings in front of 200 people, the eyes of the cameras, the eyes of the world, to me that is simply unreasonable to even expect people to have to respond under those circumstances. And I am very strongly finding that the Tedder test is easily met by the circumstances of this case.

Simply put, the trial court did not abuse its discretionary powers when it applied an appropriate balancing test, weighing the defendant's right to an open trial against the public's right to access, and rightfully found in favor of a fair trial. For these reasons, I respectfully dissent.