DORIS GALE RYAN (FORMERLY BAXTER) *v.*
HERBERT HENRY BAXTER, JR.

5-6152                                    489 S.W. 2d 241

Opinion delivered January 22, 1973

*W. B. Howard* and *Jack Segars,* for appellant.

*Kirsch, Cathey, Brown & Goodwin,* by: *John C. Gregg,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant and appellee were married July 13, 1962. Marital difficulties arose, and the parties separated in September, 1962. Appellant, on May 13, 1963, filed a complaint for divorce alleging non-support, and seeking custody of a child en ventre sa mere. Appellee, on May 16, 1963, entered his appearance and waived notice, and on June 25, 1963, the Greene County Chancery Court entered a decree awarding a divorce to appellant and giving her custody of the child, Kimberly Lynn Baxter. No support payments were sought by appellant and none was awarded. The decree denied appellee visitation rights.

At the time of the original decree, appellee was stationed overseas in the armed services. Upon his return, sometime in 1964, appellant began allowing appellee to visit with his child, and at times appellee would keep the child at his residence in Big Sandy, Tennessee. Difficulties again arose, and on December 16, 1971, appellee instituted the present proceeding by a petition seeking modification of the earlier decree to allow him reasonable visitation rights, alleging, as changed circumstances, that through his own initiative and with the appellant's consent he had been granted visitation privileges, and that appellant now refused to allow such privileges. The answer and counterclaim of appellant filed on December 31, 1971, stated appellant's contention that appellee's action in not seeking visitation rights, at the time of the divorce, constituted an abandonment and required denial of relief because appellee did not come into equity with clean hands. Appellant also contended that her granting visitation privileges to appellee was not a voluntary modification of the decree, and that such privileges were no

different than if she had allowed the child to visit with strangers. Finally, in her answer, appellant claims that since appellee has a common law duty to support the child, and since appellee has contributed nothing to the care of the child, no relief should be afforded appellee until he reimburses her for expenses incurred for the support of the child during the period since their divorce. As a counterclaim, appellant sought $5,498.77 as expenses for support of the child for the three years immediately preceding appellee's petition, and attorney's fees. After oral testimony the chancellor awarded appellee reasonable visitation privileges, denied appellant's counterclaim for past child support and denied appellant attorney's fees. He also stated that, even though appellant had not sought future child support, appellee had testified that he was willing to contribute to the child's support, so he would treat the pleadings as amended in that respect. Upon this amendment he awarded appellant $75.00 per month child support. On appeal, appellant assigns three points as error in the lower court. They are:

I. The court erred in refusing to grant judgment against the defendant for child support, expense incurred by appellant prior to hearing.

II. The court erred in failing to award appellant an attorney's fee.

III. The court erred in modifying the decree to the extent of allowing appellee to remove the child from the jurisdiction for visitation.

We find no basis for reversal and shall discuss the points in order.

## I.

A further recitation of the facts is necessary in order to fully understand this point. Both parties have remarried, appellant sometime in 1968, and appellee in 1969. Appellee has two children by his second marriage. Appellant has three other children. Appellant is unemployed, and her husband has provided the money for which appellant is now seeking reimbursement. These funds were apparently ex-

pended both as payments for essentials for Kimberly Baxter and as total general expenses for the Ryan household. The only evidence offered by appellant as to expenses incurred for Kimberly's support consisted of estimates based on total expenditures for the household divided by six or informal valuations of Kimberly's clothing and school expenses.

During the period between the divorce and the present action, the visitation privileges exercised by appellee took on an air of regularity, the child having an extended stay during the summer months while on vacation from school, and brief stays during the Christmas holidays; most visits were in Tennessee. Difficulties began in the summer of 1971, when appellee is alleged to have refused appellant's request to pay for piano lessons, and in December 1971, the appellee allegedly threatened to keep the child in Tennessee. These assertions were controverted by appellee. He claimed that he agreed to pay for the child's piano lessons if appellant would have the decree modified so as to allow him visitation privileges, and denied the alleged threats. Appellant did not deny appellee's testimony that she never sought child support until this action was instituted.

For reversal appellant relies on cases such as *Holt* v. *Holt,* 42 Ark. 495, and *Wilder* v. *Garner,* 235 Ark. 400, 360 S.W. 2d 192, which hold that a divorce does not terminate a father's obligation to support his child, and that the father may be compelled to reimburse the mother for amounts she has expended in support of the child subsequent to a divorce. However, appellant admits that she did not provide the funds which supported Kimberly Baxter. Thus, it might appear that the question to be resolved was confined to the narrow issue whether a father can be compelled to repay expenditures made by the stepfather for support of a child in the custody of the mother, either under a moral obligation to her, as a gift or as an obligation assumed by him. We do not reach this issue, however, as it was readily conceded by appellant, on oral argument, that appellant was not entitled to reimbursement as a matter of law, and that it was not mandatory that the chancery court allow this relief, but that she was entitled to it under the facts and circumstances revealed by the evidence. This being so, the granting or denial of such a recovery rests upon the equities in a particular case. We have, in several cases, recognized

the equitable nature of such an award. *McWilliams* v. *Kinney,* 180 Ark. 836, 22 S.W. 2d 1003; *Daily* v. *Daily,* 175 Ark. 161, 298 S.W. 1012. Thus, in order to find that the chancellor committed reversible error, we would have to hold that his finding as to where the equities lay was against the preponderance of the evidence. This we cannot do.

There was ample testimony that supported the chancellor's findings, however, the factor that we find most persuasive is appellant's failure to demand support from appellee until a dispute arose concerning the fixing of definite visitation rights which would have deprived her of an unlimited discretion in the matter. For approximately eight years appellant seemed quite satisfied with the parties' financial and visitation arrangements, and it was only when appellee sought to have the de facto visitation rights incorporated into a court decree that appellant sought past support moneys, and then by way of counterclaim. Furthermore, appellant had not sought the future support payments awarded by the court. Thus, it could reasonably be inferred that the appellant was merely using the support obligation of appellee to maintain her control over his visitation privilege. The failure for two and one-half years of a mother, whose child was supported as a member of a family consisting of the mother and a stepfather, to seek reimbursement of support furnished by the stepfather was considered as a factor in the denial of relief in *McWilliams* v. *Kinney,* supra. An allowance of future support was held sufficient consideration for both past and future support under the circumstances in *Daily.* It should be noted that the testimony on which reimbursement was sought consisted only of unsubstantiated estimates. The chancellor said that he denied the judgment for past support and maintenance that "she tried to prove."

For these reasons, we cannot say that the findings of the chancellor were against the preponderance of the evidence.

## II.

Appellant next contends that the chancellor committed error in not awarding her an attorney's fee. The

award of attorney's fees in divorce and support proceedings is governed by Ark. Stat. Ann. § 34-1210 (Repl. 1962) which provides:

> During the pendency of an action for divorce or alimony, the court may allow the wife maintenance and a reasonable fee for her attorneys, and may enforce the payment of the same by orders and executions and proceedings as in cases of contempt, and the court may allow additional attorney's fees for the enforcement of payment of alimony, maintenance and support provided for in the decree.

Appellee would have this court interpret the last clause of this statute to require a pre-existing support award in favor of the wife before attorney's fees can be awarded in a petition to modify a prior decree. Even if the statute should be held to apply in a case such as this, attorney's fees are not awarded under its provisions as a matter of right. This statute has long been interpreted to leave the granting or denial of such fees within the sound discretion of the chancellor. *Reibstein* v. *Reibstein,* 220 Ark. 783, 249 S.W. 2d 847; *Gladfelter* v. *Gladfelter,* 205 Ark. 1019, 172 S.W. 2d 246, *Tilley* v. *Tilley,* 210 Ark. 850, 198 S.W. 2d 168. We find no abuse of the chancellor's discretion which would warrant our disturbing his action, particularly in view of appellant's lack of success in the case. See *Gladfelter* v. *Gladfelter,* supra; *Tilley* v. *Tilley,* supra.

## III.

Allowance of extra-state visitation privileges and the requirement of a bond are also matters within the chancellor's discretion. *Antonacci* v. *Antonacci,* 222 Ark. 881, 263 S.W. 2d 484, *Gibson* v. *Gibson,* 156 Ark. 30, 245 S.W. 32; *Weatherton* v. *Taylor,* 124 Ark. 579, 187 S.W. 450. In the latter two cases, we held that the matter of requiring a bond depended upon a determination whether or not there is reason to believe that the orders of the court will be obeyed and the child returned to the jurisdiction of the court pursuant to the court's orders. Here the chancellor apparently believed the appellee's denial of the alleged threat never to return Kimberly to her mother, and since appellant's testimony about this threat

was the only evidence of any hazard to the safe and prompt return of the child to Arkansas, we cannot say the chancellor abused his discretion.

Since we find no reversible error, we affirm the court's decree modifying the original divorce decree.

The Chief Justice would require bond for the removal of the child from the state and would award an attorney's fee.