## Ed STOREY *v.* Peggy WARD

74-296                                       523 S.W. 2d 387

Opinion delivered April 28, 1975

*Yates & Turner*, for appellant.

*Hardin Jesson & Dawson*, for appellee.

GEORGE ROSE SMITH, Justice. The only issue here is the retroactive liability of the appellant father for the support of the parties' two children, at the rate of $70 a month. This appeal is from a decree imposing liability in the total sum of $6,262.00.

The facts are unlike those in any of our prior cases. Peggy Storey (now the appellee, Peggy Ward) brought suit in

1964 for a divorce on the ground of personal indignities. Attached to the complaint was a property agreement which recited that it was contingent upon its approval by the court and which contained this pivotal paragraph:

> Both parties further agree that the plaintiff is a fit and proper person to have the permanent care and custody of the children of plaintiff and defendant, and the defendant agrees to pay the plaintiff Seventy Dollars ($70.00) per month for the support of the said minor children so long as she shall remain unmarried and within the jurisdiction of this court.

The court's final decree was signed in June, 1964, by the late Chancellor Hugh M. Bland. The decree found that the parties' agreement should be approved and that the defendant should pay $70 a month for the support of the children "in accordance with the property agreement entered into between the parties." In the final paragraph of the decree the court granted a divorce to the plaintiff, awarded her the custody of the children, and ordered the defendant to pay $70 a month as child support, with reasonable visitation rights. The court retained jurisdiction of the case.

The father made the payments, although not always promptly, until his former wife married Wendell Harris in December, 1965. No further payments were made until that marriage ended in a divorce in September, 1970. Storey then began making payments of $25 a month, saying (according to the appellee) that that was all he could afford. The appellee married her present husband, Jack Ward, in March of 1971, and Storey again discontinued his payments. In December of 1973 the appellee filed her present petition, asserting a claim for arrearages totaling $6,262.00 and asking that the appellant be cited for contempt of court. By an interim order the chancellor directed that the $70 payments be resumed. This appeal is from a later order entering judgment, as we have said, for $6,262.00.

Chancellor Grant, in making that award, construed Chancellor Bland's original decree as a directive that the monthly payments be made regardless of the mother's

remarriages. We do not so construe the decree. Although the final paragraph did not mention the matter of remarriage, two earlier paragraphs had specifically approved the agreement without reservation and had directed the father to make the $70 monthly payments "in accordance with" the parties' agreement. When the decree is considered in its entirety, we think it gave effect to the agreement. Moreover, the parties themselves so interpreted the decree for almost ten years (with the possible exception of a somewhat ambiguous petition that was filed by the appellee in 1968 but not brought to the trial court's attention).

We turn to the novel and interesting problem of the validity of the parties' agreement, drafted by counsel and approved by the court, that the defendant should pay the stipulated child support money to the plaintiff "so long as she shall remain unmarried . . ." Even though we have never passed upon this exact question, our earlier decisions are decidedly helpful.

A father's duty to support his minor children undoubtedly continues after the entry of a divorce decree. In *Holt* v. *Holt*, 42 Ark. 495 (1883), the decree awarded custody of the children to the mother but made no provision for their support. When, two years later, the mother brought suit to recover the amount of her expenditures for child maintenance, we held, on demurrer, that her complaint stated a cause of action. Similarly, in *McCall* v. *McCall*, 205 Ark. 1123, 172 S.W. 2d 677 (1943), the chancellor suspended the father's payments owing to his unemployment and inability to pay. When his financial condition improved we held that he could be required to reimburse his former wife for her child maintenance expenses during the period of suspension, because the duty of support is a continuing one.

In a number of cases, such as *Robbins* v. *Robbins*, 231 Ark. 184, 328 S.W. 2d 498 (1959), we have said that the duty of child support cannot be bartered away by the parents. That does not mean, however, that the duty of support cannot be affected by contract. What our cases actually hold is that the duty cannot be bartered away permanently to the detriment of the children. The court can unquestionably modify an

award prospectively to meet changed conditions, even though it was based upon a contract. *Lively* v. *Lively*, 222 Ark. 501, 261 S.W. 2d 409 (1953). On the other hand, the law does not permit an award of maintenance to be increased retrospectively, for a period before the mother seeks the increase, even though her outlay has exceeded the amount of the award. *Gant* v. *Gant*, 209 Ark. 576, 191 S.W. 2d 596 (1946). Moreover, the welfare of the child is paramount. Hence a mother could not obtain judgment for past-due payments after the five-year statute of limitations had run and after the child had reached maturity, had married, and was no longer dependent upon her parents. *Brun* v. *Rembert*, 227 Ark. 241, 297 S.W. 2d 940 (1957). Such a recovery would not have benefited the child.

We find no great difficulty in applying the principles of our earlier decisions to the case at bar. The appellee, with the advice of her attorney, accepted her husband's obligation to pay child support only so long as she remained unmarried. There is certainly no principle of public policy making such a contract absolutely void, because upon remarriage a divorced mother may have no need for child support payments from her former husband, who may himself be destitute. (We note that here the appellant has also remarried and has another family to support.)

On the other hand, the parents' inability to permanently bargain away the children's right to support preserves the court's power to modify the original decree to meet subsequent conditions. Here the appellee did not press her claim to child support until the filing of her present petition, on December 17, 1973. At the hearing below she testified that she and her present husband are supporting four children and that she finds it necessary to borrow money to live on. Upon the proof the chancellor was warranted in reinstating the appellant's payments as of the filing of the present petition, but otherwise no retroactive liability should be imposed.

The decree is reversed and the cause remanded for further proceedings. Appellant is to pay costs in this Court. (6-23-75).