Roy C. GREEN *v.* Vikita BELL

91-280                                826 S.W.2d 226

Supreme Court of Arkansas
Opinion delivered March 2, 1992

474

*Randell Templeton*, and *James W. Whitney, Jr.*, for appellant.

*John W. Walker* and *Austin Porter, Jr.*, for appellee.

STEELE HAYS, Justice. On June 18, 1983, Vikita Bell,

appellee, gave birth to a son, Landon Bell. In 1989 Ms. Bell filed a paternity action against Roy C. Green, appellant, in Pulaski County. That action was dismissed for lack of venue. On January 2, 1990, appellant filed this suit in Clark Chancery Court to determine the paternity of Landon Bell, asking that blood tests be ordered. The appellee filed a counterclaim seeking lying-in expenses, past and future child support, costs and attorneys fees.

Blood tests were performed and introduced over appellant's objection. The chancellor found appellant was the father of Landon Bell, that paternity was supported by a preponderance of the evidence even without considering the blood test results, and entered judgment for the appellee against the appellant for various expenses, retroactive and prospective child support, costs and fees. Judgment was also awarded appellee's father, Henry Bell, for lying-in expenses and other costs.

Appellant appeals challenging 1) the admission of the blood tests; 2) the trial court's finding that appellant was the biological father; 3) a monetary award barred by the statute of limitations and made to a third person, not a party to the law suit; 4) the award for retroactive support as excessive and erroneous; and 5) the award for prospective support as being excessive and erroneous.

### Rulings on the Blood Tests and Paternity

Promptly after filing his complaint appellant moved the court to order blood tests of both parties and of Landon Bell, specifically requesting Roche Biomedical Laboratories, which had an office in Little Rock and was equipped "for receiving client authorization for drawing blood, taking photographs and protecting the chain of custody of such blood samples and submitting such blood specimens to its main laboratory . . . in North Carolina."

The blood tests were completed by Roche and showed a 99.99% probability that appellant was the father. When the test results were presented at trial, appellant objected on the ground that pursuant to the requirements of Ark. Code Ann. § 9-19-108 (1987), which outlines the procedures for blood tests, the report from Roche failed to show the person signing the report was qualified. *See Boyles* v. *Clements*, 302 Ark. 575, 792 S.W.2d 311

(1990).

█ It is not necessary that we address appellant's specific complaint under § 9-10-108 because, as the trial court noted, the finding that appellant was the father of Landon Bell was clearly supported by the preponderance of the evidence irrespective of the blood tests.

Appellee testified that she had been intimate with appellant on several occassions. She said she and appellant had an ongoing affair during the time Landon Bell was conceived; that she had had sexual relations with appellant in September of 1982, though she was unsure of the exact date. Letters from appellant were introduced, one of which read:

> First let me say that I'm sorry I know that you have been through quite a lot since I last saw you you've been under a lot of pressure you've probably been asked all kinds of personal questions and your complete lifestyle has made a big turn and I know that had the situation been different and I was able to be there it wouldn't be as difficult. And believe me I want to be there, be there to see [Landon]. To be able to hold him admire him and adore him. I mean its pure hell to hear over the phone that you have a beautiful son and yet you can't see him. Every single day I'm wondering how you and he are getting along. I want to be there, doing what a father is expected, to show my love for you and he, to be a shoulder when you need it, to give my day by day support, to show my love and to provide. But I understand that this is all my doing so I have to be man enough to realize that everything isn't going to be the way I want it . . . .

Defendant's Ex. 4., Vol. III of transcript.

Appellee's father, Henry Bell, testified that appellant came to visit appellee in the winter of 1983 when Landon was a few months old. Mr. Bell testified that appellant did not directly acknowledge that he was the father, but did so "by virtue of the fact that he told me that I wouldn't have to worry about [Landon's] financial future." Bell said appellant told him he would send something and some weeks later appellant sent Mr. Bell one thousand dollars.

Appellant acknowledged the letters and the relationship with appellee, but contended that at the time he spoke with Mr. Bell he was under the impression the baby was conceived in March or February of 1982, that it was sometime later when he learned the child's birthdate that he realized he could not be the father. Appellant maintained he was not with appellee anytime during the fall of 1982.

██ We regard this disputed issue as one of credibility, a matter we leave to the trial court. Considering the record as a whole we could not say the court's findings on the issue of paternity were clearly against the preponderance of the evidence.

### Lying-In Expenses and Statute of Limitations

As his third point appellant argues the trial court erred in awarding damages to Henry Bell, who was not a party to the suit, and, alternatively, that the damages were barred by the statute of limitations.

Appellant argues that any debt due Henry Bell for the 1983 lying-in expenses are debts not in writing and, therefore, barred after three years under Ark. Code Ann. § 16-56-105 (1987). In *Winston* v. *Robinson & State*, 270 Ark. 996, 606 S.W.2d 757 (1980), this statute was applied to limit support obligations of the putative father to three years. We noted in *Winston*, that "the bastardy statutes of Arkansas contain no specific statute of limitations" and, therefore, we relied on *Davis* v. *Herrington*, 53 Ark. 5 (1890), where, in a paternity case, the three year limit on contracts not in writing was imposed. *See also Dozier* v. *Veasley*, 272 Ark. 210, 613 S.W.2d 93 (1981).

However, the *Winston* opinion was written before Ark. Code Ann. § 9-10-109 (1987) was enacted. Section 9-10-109 provides:

(a) Subsequent to the finding by the chancery court that the defendant is the father of the child, the court shall follow the same guidelines, procedures, and requirements as set forth in the laws of this state applicable to child support orders and judgments entered by the chancery court as if it were a case involving a child born of a marriage in awarding custody, visitation, setting amounts of support costs and attorney's fees, and directing payments through the clerk of the court.

That directive in § 9-10-109 brings up Ark. Code Ann. § 9-14-236 (1987) (Act 1989 No. 525 § 1) affecting procedures and limitations on actions for the support of children born of a marriage:

> In all cases where the support of any child or children is involved, an action for the enforcement of child support or for judgment of arrearages shall be limited to ten years prior to the filing of the action.[1]

However, there has always been a distinction between statutes of limitations in *paternity* proceedings for support and proceedings for the support of children in divorce suits. For the latter, the limitation was five years. *See also Sullivan* v. *Edens*, 304 Ark. 133, 801 S.W.2d 32 (1990) (discussing the change in statutes of limitation from five to ten years via § 9-14-236, speaking only in terms of actions on divorce decree support awards.)

■ This raises the question whether in paternity cases the period of limitation is three years, as held in *Davis* v. *Herrington, supra*, and *Winston* v. *Robinson, supra*, or, whether under § 9-10-109 and § 9-14-236, a different period of limitations applies. Under either the three-year common law rule or ten-year rule of § 9-14-236, the lying-in expenses are barred in this case. Recovery is obviously barred under the three-year rule, and as to the ten year rule, in *Sullivan* v. *Edens, supra*, we said the new ten-year limitation would only apply to payments accruing after the effective date of the statute (1989) and actions which accrued before the effective date would be governed by prior statutes of limitations. Thus, it is unnecessary that we choose between these two limitation periods, because the claim for lying-in expenses incurred in 1983 is barred in any event. We note as well this distinction between the two statute of limitations was not raised

---

[1] This statute was amended in 1991, enlarging the statute of limitations, but under our recent holding in *Johnson* v. *Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992) we can't consider the application of the 1991 amended statute to this case as pursuant to our holding in *Lilly*, the "legislature cannot expand a statute of limitation so as to revive a cause of action already barred." Here, if we were to consider whether the amended statute were applicable to the facts and if we decided in the affirmative, the application of the new statute of limitations would work to revive a cause of action previously barred.

or discussed in the trial court. The other contention, i.e., it was error to award judgment to a non-party, is moot.

## Retroactive Child Support

Fourth, appellant argues the award for retroactive child support is excessive and contrary to law. Appellant claims it was error for the trial court to apply the 1991 Family Support Guidelines to determine support for years prior to 1991. While we agree with appellant on the law, there is nothing in the record that indicates the trial court determined the amount of support in the manner appellant suggests.

■ To the contrary, the record shows the awards for previous years were made, in the court's words, "pursuant to Ark. Code Ann. § 9-10-111" and, further, in reaching these amounts it considered "the infant's need for food, shelter, clothing, medical expenses, child care, standard of living, insurance and based upon the father's take home pay, finds that Roy C. Green should have contributed to his son's support as follows." (Abstract 22-23) The trial court then listed appellant's salary for the years in question, which varied, and made an award of 8 % of appellant's salary for each of those years. The 1991 guidelines are not mentioned in the court's support determination for prior years. It was not until the court addressed *prospective* support that the 1991 guidelines are mentioned. The chancellor at that point addressed appellant's current salary in light of the 1991 guidelines and questioned the 13 % reflected in the Support Chart. The chancellor observed that 13 % would be unfair to appellant and fixed the payment at $3,500 a month. We find no merit in appellant's argument.

Alternatively, appellant argues that the awards for past support should be limited to the reasonable amounts *actually* expended by the appellee on the child, citing *Wilder* v. *Garner*, 235 Ark. 400, 360 S.W.2d 192 (1962), and *McCall* v. *McCall*, 205 Ark. 123, 172 S.W.2d 677 (1943). Granted, the mothers in those cases were reimbursed only for expenses incurred, but that was all that was asked for. Nothing in those cases would require us to limit recovery to reimbursement only. Rather, as stated more recently, the question is simply what is fair:

> The granting or denial of such a recovery rests upon the equities in a particular case. We have in several cases,

recognized the equitable nature of such an award. Thus, in order to find that the chancellor committed reversible error, we would have to hold that his finding as to where the equities lay was against the preponderance of the evidence.

*Ryan* v. *Baxter*, 253 Ark. 821, 489 S.W.2d 241 (1973).

■ We disagree that the trial court was limited to amounts actually expended for past support and appellant has not demonstrated how the amounts awarded are against the preponderance of the evidence.

## Prospective Support

Appellant challenges the trial court's award for prospective support. As mentioned, the trial court referred to the 1991 Child Support Chart and found that within appellant's income bracket, the monthly support award for one dependant would be 13% of appellant's salary. The trial court further found that 13% was excessive and instead ordered payments of $3,500 a month, approximately half the amount payable under the chart for appellant's earnings.

■ The arguments on this point are conclusory and we are given no supporting authority. Arkansas Code Ann. § 9-12-312 (1987) states that the amount listed in the most recent family support chart is a rebuttable presumption for the award of child support. Appellant has failed to rebut and we are unpersuaded by the argument.

■ Finally, appellant urges that the award of an attorney's fee of $40,000 was an abuse of the court's discretion. He recognizes that the court has broad discretion to award attorney's fees, *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987), but maintains that the award is excessive. We stated our rule in *Lytle* v. *Lytle*, 266 Ark. 124, 583 S.W.2d 1 (1979):

> Appellant objects to the attorney's fee allowed in this case on two bases. First, he says there is absolutely nothing in the record to afford an objective standard on which the trial court could assess and determine the amount of the fee, and urges that we treat fees arrived at in such a "haphazard" fashion from a subjective viewpoint by the chancellor as erroneous. We decline to accept this invitation. We have

repeatedly held that the award of attorney's fees in divorce cases is a matter lying within the sound judicial discretion of the chancellor, the exercise of which will not be disturbed on appeal in the absence of its abuse. Unless appellant has demonstrated that the amount of fees allowed was excessive, we will affirm. [Cites omitted.]

Appellant has not demonstrated how the fee is excessive and, hence, we will not look beyond the chancellor's award.

Affirmed as modified.