ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.* Robert HARDY

93-153                                        871 S.W.2d 352

Supreme Court of Arkansas
Opinion delivered February 28, 1994

*G. Keith Griffith*, for appellant.

*Eddie N. Christian*, for appellee.

ROBERT H. DUDLEY, Justice. The Arkansas Department of Human Services filed this paternity suit on behalf of Brenda Elliott, the mother of the child, and asked that Robert Hardy be found to be the father and that he be ordered to pay past and future child support. The chancellor heard the proof, decided the case, signed a final order setting out his ruling, and, in a second order, decreed that the final order was sealed. The Department appealed to the court of appeals. The court of appeals questioned whether it had jurisdiction and certified the case to this court for an interpretation of the various rules. We remanded the case for the parties to brief the issues of whether the chancellor validly sealed the final order and whether the appellate court obtained jurisdiction. *Arkansas Dep't of Human Servs.* v. *Hardy*, 314 Ark. 537, 866 S.W.2d 820 (1993). Their briefs have now been received, and the case is again submitted to us. We take jurisdiction, and reverse, modify, and remand.

The initial issue is whether the trial court entered a final

order so that we have appellate jurisdiction. Rule 58 of the Arkansas Rules of Civil Procedure provides that "[e]very judgment or decree shall be set forth on a separate document. A judgment or decree is effective only when so set forth and entered as provided in Administrative Order Number 2." Administrative Order Number 2, in the material part, provides that a judgment or decree shall be "filed in the folio assigned to the action and shall be marked with its file number." Rule 4(e) of the Arkansas Rules of Appellate Procedure, which concerns the time for filing a notice of appeal, provides that an order is "entered" when it is "filed with the clerk of the court in which the claim was tried." The date a judgment is filed with a court clerk is denoted by the clerk marking or stamping the date and the word "filed" on the document. *See Shaefer* v. *McGhee*, 284 Ark. 370, 681 S.W.2d 353 (1984).

The final order in this case was set forth on a separate document as required by Rule 58. It contains the case number on the front page as well as the date the judge signed the order. It was filed with the clerk, and the clerk placed it in the folio assigned to the action, as required by Administrative Order Number 2. However, the clerk did not separately mark the final order because it was sealed in the envelope. Instead, the clerk taped a copy of the second order securely to the sealed envelope containing the final order. The second order provides: "The [final] Order made and entered by this court on the 19th day of October, 1992, is hereby sealed and filed in-camera and shall not be opened except by order of court of competent jurisdiction." The final order bears the identical style and date.

█ The issue is whether the final order was sufficiently marked by either the chancellor or the clerk to constitute entry. The clerk placed her filemark on the second order and then securely taped a copy of that second order onto the face of the envelope containing the final order so that there can be no doubt about the authenticity of the final order or the date it was handed to the clerk for placement in the folio. Consequently, we hold there was a sufficient marking of the final order to constitute an entry for purposes of this appeal. This holding is limited to the facts of this case, and, as can be seen from the next section of this opinion, it is a problem that should not arise again.

The foregoing issue came about because the chancellor sealed the final order, and, contrary to the arguments of both parties, we know of no authority for the sealing of a final order. One of the basic principles of a democracy is the people have a right to know what is done in their courts. Correlative of this principal is the vital function of the press to subject the judicial process to extensive public scrutiny and comment. *See Arkansas Television Co.* v. *Tedder*, 281 Ark. 152, 662 S.W.2d 174 (1983). Secret final orders could defeat this synergy of the peoples' right and the press's function, especially in cases in which the State is a party, as in this case. In *Sheppard* v. *Maxwell*, 384 U.S. 333 (1966), the Supreme Court wrote that when public court business is conducted in private, it becomes impossible to expose corruption, incompetence, inefficiency, prejudice, and favoritism. For this reason traditional Anglo-American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to proceedings and records of judicial tribunals. We have no hesitancy in holding the final order in this case should not have been sealed.

There is no rule providing for secret final orders, but parts of files may be sealed, and some hearings may be closed to the public. The General Assembly has provided the general rule that "every person may freely attend the sittings of every court." Ark. Code Ann. § 16-10-105 (1987). However, other statutes provide that particular proceedings may be closed under certain circumstances. *See, e.g.*, Ark. Code Ann. § 4-75-605 (Repl. 1991) (for cases involving trade secrets); § 9-9-217 (Repl. 1993) (involving adoption proceedings); § 9-27-325 (Repl. 1993) (for juvenile proceedings); and § 16-13-318 (1987) (involving domestic relations cases). Section 9-27-217 provides, "Adoption *records* shall be closed, confidential, and sealed unless authority to open them is provided by law or by order of the court for good cause shown." (Emphasis added.)

Without determining which branch of government has the power to make laws or rules providing that parts of files can be sealed or court proceedings can be closed, we note that Rule 26 of the Arkansas Rules of Civil Procedure provides for protective orders closing depositions, for protection of trade secrets, and for filing specified documents in sealed envelopes. In addition, Rule 6-3 of the Rules of the Supreme Court provides for

anonymity in certain appellate proceedings by the use of the initials of the first and last name of children involved in adoption or juvenile proceedings. We often utilize this rule for appeals in adoption proceedings after the final order has been entered. *See, e.g., In Re Adoption of K.F.H. and K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993). We have recognized the inherent authority of a trial court to issue appropriate protective orders to control court records, and, thus, the right to inspect public records is not absolute. *See City of Fayetteville* v. *Edmark*, 304 Ark. 179, 801 S.W.2d 275 (1990). Many jurisdictions have made similar holdings. *See, e.g., Deere & Co.* v. *Finley*, 431 N.E.2d 1201 (Ill. App. Ct. 1981); *Church of Scientology* v. *Armstrong*, 283 Cal. Rptr. 917 (Cal. Dist. Ct. App. 1991); & *Werfel* v. *Fitzgerald*, 260 N.Y.S.2d 791 (N.Y. App. Div. 1965).

The inherent authority to seal parts of court files is tempered by the requirements that a request for sealing part of a file must be particularized, that there must be some good cause for sealing part of a file, such as a trade secret, and that it should be in effect for only so long as is necessary to protect the specified interest. If a trade secret has no value after five years, the protective order should be for no longer than five years. *Deere & Co.* In *Giltner* v. *Stark*, 219 N.W.2d 700, 707 (Iowa 1974), the court ruled that factual details of a divorce action might be sealed long enough "to permit the conciliation process to have some hope of success," but after that time the files were to be open. For the related requirement of particularization of a need for closure of a courtroom see *Arkansas Television Company* v. *Tedder*, 281 Ark. 152, 662 S.W.2d 174 (1983) and *Arkansas Newspaper, Inc.* v. *Patterson*, 281 Ark. 213, 662 S.W.2d 826 (1984). In summary, the trial court had no authority to seal the final order in this case, and we order it unsealed.

The chancellor ruled that Robert Hardy is the father of the child. There is no cross-appeal of that issue. The only assignments of error are those raised by the Department on direct appeal. In the first of these assignments, the Department contends that the chancellor erred in fixing the amount of child support. The chancellor ordered the father to pay $300 per month. The Family Support Chart in effect at the time of the trial judge's ruling, *see Guidelines For Child Support Enforcement*, appendix to ARCP, provides for child support of $824 per month according to the

Department. The Department's computation under the chart is not contested by Hardy.

The chancellor ruled that it would be inequitable to follow the chart. We have said that reference to the family support chart is mandatory, but awarding the amount set by the chart is not mandatory if it would be unjust or inequitable to do so, and if the reasons for not doing so are set out in written findings. *Stewart* v. *Winfrey*, 308 Ark. 277, 824 S.W.2d 373 (1992). In such a case, the factors to be considered in determining the amount of support are listed in the per curiam setting out the Family Support Chart. *See In Re: Guidelines For Child Support*, 314 Ark. 644, 863 S.W.2d 291 (1993). In this case the chancellor ruled that it would be inequitable to award the amount provided by the chart because: (1) the mother only requested $300 per month, (2) there is not, and never will be, a father-son relationship, and (3) the child will be a recipient of "governmental medicaid, dental and hospital insurance." The chancellor abused his discretion in making the ruling. The finding that the mother only requested child support of $300 per month was clearly erroneous. The mother requested past child support of $300 per month, but requested child support from the date of the hearing in the amount provided by the chart. The second factor, involving the father-son relationship, was incorrectly applied. That factor as used in the guidelines is to give a noncustodial parent some financial relief when the child or children spend an extraordinary amount of time with the noncustodial parent. In such a case, the noncustodial parent will obviously spend more on child support than is usual, and the custodial parent will be relieved of some of the expenses of raising the child or children. In such cases, support payments to the custodial parent may be reduced. However, that factor is not applicable to this case.

We summarily dispense with the third factor cited by the chancellor, that the father is relieved of part of the required child support because of "governmental medicaid, dental and hospital insurance." Medicaid is a governmental program designed in part to provide aid to dependent children whose income or resources are not sufficient to meet the costs of necessary medical care. *See Arkansas Dep't of Human Servs.* v. *Walters*, 315 Ark. 204, 866 S.W.2d 823 (1993). It would be incongruous to hold that a father is relieved of child support because his child

is receiving public assistance as a result of the father's failure to pay the full amount of child support. Consequently, we modify the ruling of the chancellor and order that child support be set at $824 per month commencing with the date of the final order.

The Department's second assignment is that the chancellor erred in refusing to make an award of back child support. The child was born on February 8, 1986. At that time the mother was married to another man and contended that the child was fathered by her husband. She was soon divorced, and the husband was found not to be the father of the child. It was not until September 24, 1991, that the Department filed this complaint. Hardy is being required by this opinion to pay a large amount of support commencing with the date of the final decree. In *Green* v. *Bell*, 308 Ark. 473, 479-80, 826 S.W.2d 226, 230 (1992), in discussing back child support, we said, "the question is simply what is fair," and quoted from *Ryan* v. *Baxter*, 253 Ark. 821, 824-25, 489 S.W.2d 241, 244 (1973), as follows:

> The granting or denial of such a recovery rests upon the equities in a particular case. We have in several cases, recognized the equitable nature of such an award. Thus, in order to find that the chancellor committed reversible error, we would have to hold that his finding as to where the equities lay was against the preponderance of the evidence.

We cannot say that under the circumstances of this case the chancellor's determination as to where the equities lay was against the preponderance of the evidence.

The Department's third assignment is well taken. In fact, it is conceded by Hardy. In the point, the Department contends that the chancellor erred in not ordering income withholding. Section 9-10-112(b)(1) of the Arkansas Code Annotated provides that support orders must include a provision for income withholding, absent a finding of good cause, in all cases filed pursuant to Title IV-D of the Social Security Act after October 1, 1989. This case fits within that category, and the chancellor did not make the required finding.

The Department's fourth, and final, assignment is that the chancellor erred in refusing to order the father to provide

health insurance for the child. Our per curiam of May 13, 1991, setting out the child support guidelines provides: "In addition to the award of child support, the court order *shall* provide for the child's health care needs, which would normally include health insurance if available to either parent at a reasonable cost." *In Re: Guidelines for Child Support Enforcement*, 305 Ark. 613, 617, 804 S.W.2d XXIV, XXVII (emphasis added). Consequently, the chancellor was obligated to make some sort of provision for health care coverage for the child. The chancellor may have thought he was complying with this provision when he found that the child would receive medicaid. However, there was no determination whether or not either parent has health insurance available to him or her at a reasonable cost, and we are unable to decide this issue on the record before us. Consequently, we remand for a determination of the child's health care.

We reverse in part, modify in part, remand for proof on the issue of health care, and remand for entry of orders consistent with this opinion.