Jeanne V. CARLTON *v.* Terry A. CARLTON

93-1135                                    873 S.W.2d 801

Supreme Court of Arkansas
Opinion delivered April 18, 1994
[Rehearing denied May 23, 1994.*]

*Southern, Allen & James*, by: *Henry A. Allen*, for appellant.

*Melinda R. Gilbert, P.A.*, and *James W. Wyatt*, for appellee.

STEELE HAYS, Justice. Terry Carlton (appellee) and Jeanne

---

*Brown, J., would grant rehearing.

Carlton (appellant) divorced in 1991 and Mr. Carlton was ordered to pay child support of $425 per month for their minor daughter, Carrie. Carlton then remarried, separated, and is paying $70 per week for another child.

Based on a change of circumstances Carlton petitioned for a reduction of child support paid to Jeanne Carlton. Mrs. Carlton counter claimed asking that visitation be made specific and if Mr. Carlton failed to exercise visitation he be required to pay $40 per day because of child care and other costs incurred by Mrs. Carlton. Her pleading alleged that because Mr. Carlton had indicated an intention not to exercise visitation in the future, child support should be increased by $250 per month.

Following a hearing the chancellor denied the requested increase and set child support in accordance with the child support chart at $352 per month. The chancellor found that Mr. Carlton was unable to exercise visitation because of his work schedule and that she lacked authority to order him to exercise visitation or to increase child support on that basis. Mrs. Carlton brings this appeal on two points of error: That the trial court erred in ruling it did not have authority to increase child support above the chart because of Mr. Carlton's failure to exercise any visitation and in not increasing child support obligation above the chart amount. Finding no error, we affirm.

Citing only this court's Per Curiam order of May 13, 1991, 305 Ark. 613, 804 S.W.2d XXIV (1991), Mrs. Carlton notes the following provision:

> The Child Support Chart assumes that the non-custodial parent will have visitation every other weekend and for several weeks during the summer. Excluding weekend visitation with the custodial parent, in those situations where a child spends in excess of 14 consecutive days with the non-custodial parent, the court should consider whether an adjustment in child support is appropriate, giving consideration to the fixed obligations of the custodial parent which are attributable to the child, to the increased costs of the non-custodial parent associated with the child's visit, and to the relative incomes of both parents. Any partial abatement or reduction of child support should not exceed 50% of the child support obligation during the extended visitation period of more than 14 consecutive days.

Mrs. Carlton interprets that provision as contemplating that a non-custodial parent would have custody between sixty-six and eighty-two days per year, that because of Mr. Carlton's failure to exercise visitation she will have increased costs not covered by the chart for that additional time.

There is no contention that the amount ordered is not in keeping with the chart based on Mr. Carlton's earnings, but the following segment of the Per Curiam is cited for the proposition that the trial court is not without the authority to order an amount other than reflected by the chart:

> It shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the Family Support Chart is correct, if the court enters in the case a written finding or specific finding on the record that the amounts so calculated, *after consideration of all relevant factors is unjust or inappropriate.* The court may grant less or more support if the evidence shows that the needs of the dependents require a different level of support. [Our emphasis.]

Clearly the chancellor may take "all relevant factors" into account in determining the appropriate amount. But we are not persuaded that on general, non-specific proof of costs of child care ordinarily and routinely incurred by the custodial parent, the chancellor was duty bound to modify the chart amount. Mrs. Carlton concedes there is no applicable case law. She relies entirely on the language quoted from the Per Curiam.

Mr. Carlton testified that he did maintenance work for a printing company and was on call twenty-four hours a day, seven days a week. He had exercised visitation regularly but had not seen his daughter in about two months; that he was now working longer hours and had difficulty finding a baby sitter on short notice, particularly when called to report for work in the middle of the night. He said Mrs. Carlton insisted on knowing the whereabouts of their daughter at all times, which made it difficult for him to exercise visitation; that he did not presently intend to exercise visitation while at his current job, that if he quit his job he would see Carrie if that were possible. He expressed his willingness to give up his rights as a parent.

The trial court found that no special needs existed, that she

lacked authority to force Mr. Carlton to exercise visitation, stating that assessing an economic penalty for not exercising visitation would be an indirect means of ordering visitation. She set child support in the amount reflected on the child support chart.

The chancellor declined to adopt Mrs. Carlton's theory that when a noncustodial parent fails to exercise visitation under the provisions of the Per Curiam order, the custodial parent is entitled to be compensated accordingly. Without suggesting that a hard and fast rule applies, we do not read the Per Curiam order as implying that when such visitation is not exercised, whether sporadically or consistently, the custodial parent may total the number of days visitation did not occur and claim additional child support per diem.

It seems clear that the quoted language is intended to apply to those situations in which the non-custodial parent has temporary custody for more than a few days at a time, i.e., for intervals "in excess of 14 consecutive days. . ." and we said as much quite recently in *Arkansas Department of Human Services* v. *Hardy*, 316 Ark. 119, 871 S.W.2d 352 (1994). We find nothing in that provision suggesting that the converse is true, that is, if the non-custodial parent does not exercise visitation, an increase is called for.

Moreover, we note, as did the chancellor, that Mr. Carlton's intentions were not unequivocal. He stated a willingness to forego parental rights, but such rights were not terminated. It appears he had exercised visitation regularly up until two months preceding the hearing, that the underlying reason was the demands of his work and Mrs. Carlton's understandable concerns about their daughter's care. He indicated if his work changed, visitation might resume. It is clear the chancellor was influenced by that testimony:

> MR. ALLEN: I understand. But it is your finding that he is not and will not in the future exercise visitation with the minor child.

> THE COURT: I am saying as of his testimony today, he says he is not and in the foreseeable future as long as he has this job he cannot. That's all I'm finding. I'm not saying he never will because that's not what he said. He said based upon his present job —

MR. ALLEN: Depending upon what testimony you —

THE COURT: Well — but he said, "I don't know that I'll ever have a different job, it's never going to happen." But I'm just telling you that he's not terminated his parental rights. He's not requested termination of his parental rights, and so I'm not going to sit here and say it's never. But I'm also not going to sit here — I wish he would visit with his child but I can't sit here and order it.

We have recognized that factors affecting child support and its modification do not lend themselves to hard and fast rules and the discretion of the chancellor plays a significant role in these determinations. *See,* e.g. *Black* v. *Black*, 306 Ark. 209, 812 S.W.2d 480 (1991); *Eubanks* v. *Eubanks*, 5 Ark. App. 50, 632 S.W.2d 242 (1982); *Collie* v. *Collie*, 242 Ark. 297, 413 S.W.2d 42 (1967); *Robbins* v. *Robbins* 231 Ark. 184, 328 S.W.2d 498 (1959).

Mrs. Carlton's second point is not an alternative argument that the chancellor should have deviated from the chart amount based on other factors, but is dependent upon a finding of merit in the first point. For the reasons already stated, we find no error and, accordingly, the order appealed from is

Affirmed.

BROWN, J., dissents.

CORBIN, J., not participating.

ROBERT L. BROWN, Justice, dissenting. This case involves a non-custodial parent, a father in this instance, who has advised the chancery court that he no longer will exercise visitation rights regarding his minor child, Carrie, due to job constraints. Under the divorce decree, he was entitled to "reasonable visitation privileges." Because of a second marriage, a second divorce, and additional child support that he must now pay, the father petitioned for a reduction in child support pertaining to Carrie. The mother counterclaimed for an increase in child support owing to the increase in her food, child care, and recreational expenses caused by Carrie's additional presence at home on *all* weekends.

While I agree with the majority that sporadically missing visitation cannot be grounds for an increase in child support, here we have something different. The father has stated that he

is halting visitation on a permanent basis. Our child support chart in *In Re: Guidelines For Child Support Enforcement*, 305 Ark. 613, 804 S.W.2d XXIV (1991) (per curiam) contemplates visitation with the non-custodial parent every other weekend for two days. To remove that factor from the equation represents a major change in the financial arrangement. The mother points out that this can mean between 66 and 82 days of additional care.

The chancellor stated that she had no authority to consider an increase in child support under the logic of our 1991 *Guidelines* when the non-custodial parent stops visitation altogether. I disagree. Our *Guidelines* entertain such deviations from child support chart amounts when the circumstances warrant it and where justice requires it.

Let me reiterate that here we are talking about expenses to the mother that are not fixed — expenses for food, child care, and recreation, to be exact. We are further talking about a permanent termination in visitation which represents a dramatic shift in the parents' arrangement and one which will clearly result in more expense to the mother. I respectfully dissent and would hold that the chancellor has the authority to weigh an adjustment in child support based on this significant new development.