Cite as 2026 Ark. App. 261

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-25-144

| | | |
|---|---|---|
| DESTON LINKOUS | | Opinion Delivered April 29, 2026 |
| | APPELLANT | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. 15DR-19-142] |
| V. | | |
| COURTNEY LINKOUS | APPELLEE | HONORABLE DAVID H. MCCORMICK, JUDGE |
| | | AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Deston Linkous appeals from the Conway County Circuit Court order granting judgment for back child support, awarding attorney's fees, setting a new child-support obligation, and denying his motion for reconsideration. On appeal, Deston argues the circuit court erred in (1) awarding a judgment for retroactive child support during a period when he and the appellee, Courtney Linkous, were reconciled and living together with their minor children; (2) awarding child support under the traditional provisions of Arkansas Supreme Court Administrative Order No. 10(V)(1) rather than the shared-custody provisions contained in section (V)(2); and (3) awarding Courtney more than the statutory minimum of attorney's fees. We affirm.

## I. *Relevant Background*

Deston and Courtney were married on October 10, 2015, and from that marriage, two minor children were born. The parties separated on June 26, 2019, and were divorced by decree on November 8, 2019. Courtney was awarded primary physical custody of the minor children, subject to Deston's visitation, but the parties shared joint legal custody. The decree ordered Deston to make biweekly child-support payments of $343. However, the parties agreed to temporarily deviate from the family support chart to give Deston the opportunity to obtain a better financial footing. The court structured his child-supports payments at $150 a month for three months, $350 a month for three months, and then $500 a month for twelve months. The decree stated that at the end of that eighteen-month period, Courtney was to reopen the divorce case and submit an agreed order setting a new child-support amount based on the parties' incomes at that time.

In January 2020, the parties reconciled and moved back in together. Deston and Courtney lived together with their children until May 2023, when they separated again. During this period, Deston stopped making child-support payments, and Courtney never reopened the divorce case to update the child-support obligation as contemplated in the decree.

On May 25, 2023, Deston filed a motion to modify custody, visitation, and child-support. In his motion, Deston alleged there had been a material change in circumstances since the entry of the decree that warranted modification. He further asserted that his position within his employment had changed, and he was now able to spend an equal

amount of time with his children. Deston also requested the child-support obligations be modified to match the parties' current financial situations. Shortly after filing his motion, Deston resumed making child-support payments.

On June 19, 2023, Courtney filed her reply opposing Deston's motion along with a countermotion seeking to hold Deston in contempt for failing to make child-support payments during the time the parties had reconciled.

On August 9, 2024, a hearing was held on Deston's motion. At the time of the hearing, Deston was employed with the Arkansas State Police and resided in Conway County in a three-bedroom home with the children during his visitation periods. He testified he had been employed as an Arkansas State Trooper for approximately ten years and was assigned to a drug-interdiction unit with a substantially more flexible schedule than he had at the time of the divorce. Deston testified his current position allows him to work primarily day shifts with significant control over his schedule, including the ability to adjust work hours to accommodate the children's needs and activities. With respect to his involvement in the children's lives, Deston testified he regularly attends school events, including parent-teacher conferences, and has attended nearly all of the children's extracurricular activities, including baseball games. He further testified that when the children are in his care, he is actively involved in their daily routines, such as preparing meals and engaging in recreational activities with them.

Deston also testified regarding his efforts to obtain additional parenting time following the parties' separation. He stated that he frequently requested additional time with

the children, often on a weekly basis, typically through text-message communications with Courtney. He testified that while Courtney occasionally granted his requests, additional time was not consistently permitted.

Regarding financial support, Deston testified he resumed paying child support following the parties' separation in 2023 and has made regular payments of approximately $735 a month through the circuit clerk's office. He explained that he did not pay formal child support from 2020 to 2023 because the parties were cohabiting and jointly supporting the household and children. He further testified he has maintained health-, dental-, and vision-insurance coverage for the children.

Courtney testified that, following the parties' divorce in November 2019, she was the primary custodian of the parties' two minor children. When asked about the financial obligations of each party during their period of reconciliation, Courtney testified it was her understanding they would split everything equally. However, Courtney stated she was ultimately responsible for making sure their bills were paid and had to work three jobs at one point to ensure the family stayed "afloat." Courtney acknowledged that Deston occasionally contributed to the household by purchasing groceries, but she also recalled asking Deston for $50 to pay the water bill and was told to "get a better job if [she could not] afford to pay the water bill."

Courtney testified she has historically handled the children's medical care and related needs. She described an incident in which one of the children required emergency medical attention, stating that she took the child to the emergency room after observing significant

4

symptoms and that she had not previously been informed of the severity of the child's condition while in Deston's care. Courtney stated that communication is limited, and the parties do not consistently discuss major decisions, including housing changes. She acknowledged she may not have always communicated certain developments to Deston but said that communication between the parties is generally strained.

Courtney testified she is employed as a nurse supervisor at a local hospital and maintains primary responsibility for the children's daily needs. She stated that when she is working, the children may be cared for by daycare providers, family members, or other trusted individuals. Courtney stated that on at least one occasion when she requested Deston's assistance while she was out of town for work, he was unavailable due to his own work obligations, requiring her to rely on family members for childcare.

At the conclusion of the hearing, the circuit court increased Deston's visitation to six overnights during every two-week period and denied Courtney's request to hold Deston in contempt. The circuit court additionally denied Deston's request that Courtney be estopped from collecting retroactive child support and denied his request to deviate from the presumptive child-support obligations under Administrative Order No. 10(V)(1) notwithstanding the change in visitation.

On August 22, 2024, before the circuit court entered a written order, Deston filed a motion for reconsideration. The motion was denied after a September 20 hearing.

On October 8, the circuit court entered its written order. In that order, the court found Courtney would have primary physical custody of the minor children, but the parties

5

would share joint legal custody; Deston's request to deviate from the child-support guidelines was denied because he failed to exercise the days he was allocated in the decree and had just been granted increased visitation; and as to child support the court found:

> The Court has determined that [Deston] earns a gross income of $6261.32 per month and [Courtney] earns a gross income of $9328.32 per month. Therefore, the parents' combined income is $15,589.64 with a basic child support obligation of $1947.00 per month for two children per the chart. [Deston] is responsible for 40.16 % of the total child support obligation and his total child support obligation is $1015.00 per month. [Courtney] is responsible for 59.84 % of the total obligation and has child support of $932.00. [Deston] was given credit for carrying the health insurance for the children which is $75.75 per month. [Courtney] was given credit for daycare at $695.00 per month. Therefore, the child support obligation of [Deston] is $1015.00 per month. The court assessed a child-support arrearage from March 1, 2020 to August 1, 2024 to be $24,840.00, judgment now due, after reviewing the certified child support pay history submitted as [Courtney]'s exhibit. Pursuant to statutory guidelines 10% interest in the amount of $2,484.00 are hereby assessed to [Courtney]. The arrearage of $24,840.00 and the interest of $2,484.00 total $27,324.00 and shall be repaid by adding 20% to the child support due each month. Therefore, the basic child support obligation of $1015.00 plus the 20% arrearage of $203.00 leaves a total child support and arrearage due each month of $1218.00 until the arrearage is paid in full.

II. *Standard of Review*

Our standard of review for an appeal from a child-support order is de novo on the record; however, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *David v. David*, 2022 Ark. App. 177, 643 S.W.3d 863. In conducting this review, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Id.*

6

In a child-support determination, the amount of child support lies within the sound discretion of the circuit court, and that court's findings will not be reversed absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). However, a circuit court's conclusions of law are given no deference on appeal. *Id.*

### III. *Discussion*

### A. Retroactive Child Support

For his first point on appeal, Deston argues the circuit court erred in awarding a judgment for retroactive child support while the parties were reconciled and living together.

While the enforcement of a child-support judgment is subject to equitable defenses, including laches, the application of those defenses is inherently fact intensive and rests within the discretion of the circuit court. *See Miller v. Ark. Off. of Child Support Enf't*, 2015 Ark. App. 188, 458 S.W.3d 733. Likewise, the decision to award retroactive child support depends on the equities of a particular case. *See Ark. Dep't of Hum. Servs. v. Hardy*, 316 Ark. 119, 871 S.W.2d 352 (1994). Although the supreme court has framed the inquiry as "what is fair," the application of fairness is determined through governing statutes and the child-support guidelines. *See id.* at 126, 871 S.W.2d at 357 (quoting *Green v. Bell*, 308 Ark. 473, 479–80, 826 S.W.2d 226, 230 (1992)).

Here, the parties presented conflicting testimony regarding their financial arrangements during the period of reconciliation. Deston testified that, while living together, the parties shared expenses and functioned as a family unit with both contributing to the household. Courtney testified she bore the majority of the financial responsibility, worked

multiple jobs to support the household, and was unable to obtain even minimal financial assistance from Deston for certain expenses. Thus, the circuit court was presented with a classic credibility determination. It was within the province of the circuit court, as the finder of fact, to assess the weight and credibility of the witnesses' testimony and to resolve these conflicts. *See Dac Tat Pham v. Anh Thuy Nguyen*, 2019 Ark. App. 500, 588 S.W.3d 427. This court does not reassess the circuit court's credibility determinations. *Id.* On this record, we cannot say the circuit court abused its discretion. The circuit court's decision turned on its evaluation of the parties' competing testimony regarding financial contributions during the reconciliation period. Given that that determination rests on credibility, and because the circuit court was in a superior position to make that assessment, we affirm.

B. Arkansas Supreme Court Administrative Order No. 10

Next, Deston argues the circuit court erred in calculating child support under the traditional custodial framework set forth in Administrative Order No. 10(V)(1) rather than applying the shared-custody provisions of section (V)(2), given his exercise of more than 141 overnights a year.

In Arkansas, a circuit court is required to use the family support chart created by the Arkansas Supreme Court in determining a reasonable amount of child support. Ark. Code Ann. § 9-12-312(a)(3)(A) (Repl. 2020). Administrative Order No. 10 states the following in relevant part:

**Section V. Computation of Child Support.**

1. <u>Calculation and Use of Worksheet.</u>

8

Except as provided in Section II, paragraph 3, Self-Support Reserve, the gross income of both parents shall first be determined and combined. Each parent's share of the combined total gross income is then determined based on their percentage of the combined income. Next, the basic child-support obligation is determined by looking at the Chart for the parties' combined income and the number of children they have. A presumptive child-support obligation is then determined by adding the allowed additional monthly child-rearing expenses (including health insurance premiums, extraordinary medical expenses, and childcare expenses). Each parent's share of additional child-rearing expenses is determined by multiplying the percentage of income they have available for support, which was determined in step 1. The total child-support obligation for each parent is determined by adding each parent's share of the child-support obligation with their share of allowed additional child-rearing expenses. Lastly, the payor receives a credit for the additional child-rearing expenses that the payor is paying out of pocket, resulting in their presumed child-support order. See the "Forms" Addendum for a sample child-support calculation.

The payor parent shall owe his or her presumed child-support obligation as a money judgment of child support to payee parent.

All orders granting or modifying child support shall contain the court's determination of both parents' gross income and shall specify who is the payor parent and who is the payee parent. Any order shall also state the amount of health insurance premiums, extraordinary medical expenses, and childcare expenses allowed in determining the total child-support obligation. See the "Forms" Addendum for sample language that may be used.

2. Shared Custody Adjustment.
In cases where the parties share approximately an equal amount of time, the parties shall complete the Worksheet and Affidavit of Financial Means. The court shall then determine the basic child-support obligation by deducting the smaller obligation from the larger obligation as determined in "Part II: Basic Obligation" of the Child Support Worksheet. Once the basic child-support obligation has been determined, if the court determines there are Additional Monthly Child-Rearing Expenses that must be accounted for in Part III of the Child Support Worksheet, the court shall refer to "Line 10: Share of additional child-rearing expenses" to determine what adjustment, if any, should be made to the basic child-support obligation.

In cases where the parties share less than an approximately equal amount of time, but each parent has responsibility of the child(ren) for at least 141 overnights per calendar year, the parties shall complete the Worksheet and Affidavit of Financial Means. The court may then consider the time spent by the child(ren) with the payor parent as a basis for adjusting the child-support amount from the amount determined on the Worksheet. In particular, in deciding whether to apply an additional credit, the court should consider the presence and amount of disparity between the income of the parties, giving more weight to those disparities in the parties' income of less than 20% and considering which parent is responsible for the majority of the non-duplicated fixed expenditures, such as routine clothing costs, costs for extracurricular activities, school supplies, and any other similar non-duplicated fixed expenditures.

This discretionary adjustment is based on the number of overnights, or overnight equivalents, that a parent spends with a child pursuant to a court order. For purposes of this section, overnight equivalents are calculated using a method other than overnights if the parent has significant time periods on separate days when the child is in the parent's physical custody, under the direct care of the parent, but does not stay overnight.

If the court determines that the Worksheet-based offset amount is inappropriate, the court may deviate after having considered the deviation factors set forth in Section II, Paragraph 2 above, including what is in the child's or children's best interest.

Ark. Sup. Ct. Admin. Order No. 10(V)(1), (2).

Here, the circuit court expressly acknowledged its authority to deviate and made specific findings that Deston failed to meet his burden of proof for such a deviation. The court noted Deston had not consistently exercised visitation as originally allocated and had only recently been granted increased parenting time. These findings bear directly on whether the circumstances warranted a shared-custody adjustment. Additionally, the circuit court carefully calculated each party's income, percentage share, and corresponding support obligations. After accounting for credits, health insurance paid by Deston, and daycare

10

expenses paid by Courtney, the resulting obligations were nearly equal. This further supports the court's determination that no additional deviation was warranted. Deston urges this court to interpret six overnights during every fourteen days as constituting "approximately equal time" under section (V)(2). However, assuming arguendo that such a division qualifies, the rule still vests discretion in the circuit court to determine whether and to what extent an adjustment is appropriate. The court exercised its discretion here and provided a reasoned basis for its decision; therefore, we affirm.

C. Attorney's Fees

Finally, Deston argues the circuit court erred in awarding Courtney more than the statutory minimum in attorney's fees because she did not prevail on issues of visitation and contempt.

We will not set aside an award of attorney's fees absent an abuse of discretion by the circuit court. *Calvert v. Est. of Calvert*, 99 Ark. App. 286, 288, 259 S.W.3d 456, 459 (2007). Arkansas Code Annotated section 9-14-233(b) (Supp. 2025) states that the circuit court "shall award a minimum of ten percent (10%) of the support amount due or any reasonable fee" in actions to enforce child-support obligations. Nothing in the statute conditions an award of fees on a party prevailing on ancillary issues such as visitation and contempt. Rather, the statute is triggered by the enforcement of unpaid child support. Here, the circuit court awarded a judgment for substantial arrearages, thereby invoking the statute. Further, the statute expressly authorizes the court to award either the 10 percent minimum or "any reasonable fee," thereby granting the court broad discretion in determining the appropriate

11

amount. The circuit court exercised that discretion in awarding fees beyond the minimum. Deston has not demonstrated the fee was unreasonable or that the circuit court acted improvidently in making its determination. Therefore, we affirm.

Affirmed.

TUCKER and MURPHY, JJ., agree.

*Jiles, Brown & Vinson, LLP*, by: *Matthew K. Brown*, for appellant.

One brief only.